STATE of Tennessee, Appellee,

v.

David Allen BRIMMER, Appellant.

Supreme Court of Tennessee,
at Knoxville.

Feb. 7, 1994.

Rehearing Denied May 2, 1994.

Charles Burson, Atty. Gen. & Reporter, Merrilyn Feirman, Asst. Atty. Gen., Nashville and Jan Hicks, Asst. Atty. Gen., Clinton, for appellee.

J. Michael Clement, Clinton, J. Thomas Marshall, Dist. Public Defender, and Brock Mehler, Nashville, for appellant.

## OPINION

O'BRIEN, Justice.

Defendant was found guilty of the first degree premeditated homicide of Rodney Compton, on or about 22 October 1989. The indictment included three statutory aggravating circumstances: (1) The murder was committed while defendant was engaged in committing a robbery; (2) the murder was committed for the purpose of avoiding lawful arrest; (3) the murder was especially heinous, atrocious or cruel. The jury found one (1) statutory aggravating circumstance: the

murder was committed while defendant was engaged in committing robbery.

The proof in this case shows that the victim, Rodney Compton, disappeared sometime after 6:30 p.m. on 22 October 1989. Compton had just returned from a cruise to the Bahamas and had failed to arrive, as planned, at his mother's home on the evening of his disappearance. Compton's body was discovered in a hayfield in rural Loudon County on 7 November 1989. He was dressed in the clothing he had worn when he returned from his trip on 22 October. Decomposition of the body prevented determination of the cause of death, but Compton's neck had been cut and the pathologist who had performed an autopsy on the body testified that suffocation and strangulation were potential causes of death.

On 3 February 1990, the defendant was arrested in Refugio, Texas, on charges unrelated to this case. He was driving Compton's pickup truck, in which officers found the victim's jacket and a pair of handcuffs. On 24 February 1990, the defendant confessed to law enforcement officers that he had killed Compton. He said that the victim had given him a ride in the truck on the evening of 22 October, and he admitted that he had intended to rob the victim at that time. The defendant claimed that, when the victim made sexual advances toward him, he told Compton he was a policeman and "arrested" and handcuffed him. The defendant said he had driven Compton to another location where he choked him to death. The defendant stated he then drove to Loudon County, where he disposed of the body. While being transported to Tennessee from Texas, the defendant also identified the park in Anderson County where he had killed the victim.

Other proof established that the defendant had been in Anderson County at the time Compton disappeared, purportedly to see an acquaintance, David Parten. It was also shown that, when the defendant was seen a few days after Compton's disappearance, he had in his possession not only the victim's truck but also the victim's jacket and several souvenirs Compton had purchased in the Bahamas.

■ Defendant has raised 13 separate issues, each of which are divided into multiple sub-issues. The first complaint is that his oral and written statements introduced into evidence were unlawfully obtained and admitted in violation of his constitutional rights.

At the conclusion of a motion to suppress his written and oral admissions, the trial judge took the matter under advisement and subsequently issued an order denying the motion in which he held that defendant was advised of his constitutional rights to remain silent and that he knowingly and voluntarily waived those rights. Based on the totality of the circumstances he overruled the motion to suppress the statements. He made certain findings of fact, stating in pertinent part, that, in conjunction with his previous criminal record, defendant had acquired experience in the procedures observed by law enforcement officers in soliciting an accused to give his statement. He found that the police took care to inform defendant of his rights and took care to see that he understood them. He further found defendant had signed four (4) waivers, although some were signed with false names. The court did not find defendant to be a credible witness.

Defendant makes the same charges here. We are constrained to say that defendant's brief is very difficult to follow due to innuendo and incomplete citations to the law in a seeming effort to convey the impression that the citations are authority for the point to be made. His claim that he was denied the right to counsel and the claims that he was held for 22 days in solitary confinement and refused medical attention when requested were refuted by the law enforcement officers involved. There is no evidence in the record, other than being kept apart from the other inmates, that defendant was subjected to any other potentially coercive treatment. He says he asked for a doctor, but never stated that he was subject to any need for medical attention. To bolster his argument, defendant says the trial court's ultimate conclusion that his confession was voluntary was made without the benefit of hearing the testimony of Dr. Eric Engum during the jury-out sentencing hearing. No effort was made at the suppression hearing to present the testimony

of the doctor. The United States Supreme Court case of *Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986), is cited for the statement "as interrogators have turned to more subtle forms of psychological persuasion, courts have found mental condition of the defendant a more significant factor in the 'voluntariness' calculus."[1] The complete statement continues, "but this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness'."

The *Connelly* case stands for the proposition that coercive police activity is a necessary predicate to finding that a confession is not voluntary within the meaning of the due process clause and that the State need prove waiver of *Miranda* rights only by a preponderance of the evidence. In stating those principles the Court reminds us that "[T]he central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence," citing *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986), and further comments that while the exclusion of evidence may be necessary to protect constitutional guarantees, both the necessity for the collateral inquiry and the exclusion of evidence deflect a criminal trial from its basic purpose. The trial court in this case properly applied the "totality of the circumstances" rule and there was no violation of either federal or state constitutional rights in the admission of defendant's oral and written statements, including the oral statement made to the police officer who returned him from Texas to Tennessee.

■ Equally without merit is defendant's insistence that the exclusion of Dr. Engum's testimony at the guilt phase of the trial violated his constitutional right to present a defense. He cites *Crane v. Kentucky,* 476 U.S. 683, 687, 106 S.Ct. 2142, 2145, 90 L.Ed.2d 636 (1986), for the statement that "evidence surrounding the making of a confession bears on its credibility as well as its voluntariness." The exclusion of this evidence does not rise to a deprivation of defendant's right to present a defense under *Crane,* supra. In that case the defendant was completely foreclosed from offering any evidence at all concerning the circumstances of his confession. Dr. Engum's testimony was to be, that after listening to a 30–minute tape of defendant's interrogation by police officers when he confessed to the homicide, he believed with a reasonable degree of certainty that defendant was an individual who very plausibly could have been coerced. The trial judge denied the admission of this testimony to the jury. He ruled that the information elicited by the doctor from the tape was only a part of the interrogation procedure in which defendant confessed. He found that the basis for the doctor's opinion was not sufficiently trustworthy to go to the jury on the issue as to who and what may have influenced defendant's mental state at the time that he gave his confession. He further ruled that the doctor's testimony would be available in the sentencing phase of the proceedings in the event defendant was found guilty. Defendant was not deprived in any manner from showing the physical and psychological environment that yielded his confession. It is well within the authority of States to exclude evidence through the application of evidentiary rules that themselves serve the interest of fairness and reliability— even if the defendant would prefer to see that evidence admitted. *Crane, supra,* 476 U.S. at 689, 106 S.Ct. at 2146. A trial court's decision to admit or exclude expert testimony cannot be disturbed on appeal unless there is a clear showing that the trial court has abused its discretion. *State v. Hawk,* 688 S.W.2d 467, 472 (Tenn.Cr.App.1985). We find no such abuse in this case.

■ Defendant says it was a denial of his right to due process and that he was prejudiced by the erroneous admission of testimony and argument that he had "killed before." A review of that part of the proceedings where this testimony occurred is essential to a resolution of this issue. While describing the circumstances of defendant's confession, the sheriff of Refugio County, Texas, where defendant had been apprehended, testified

1. *See Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959).

that he had been talking with defendant and was of the opinion defendant was pretty close to the place where he really wanted to talk about the Compton homicide. He decided to postpone any further inquiry and sent for the jailer to take defendant back to the jail. The jailer and defendant left the office and were gone approximately 30 seconds to a minute when they returned. The jailer said that Mr. Brimmer wanted to talk to the officers. It was the sheriff's testimony, "we talked to him, and he said that he did kill this Mr. Compton and that the reason—I had told him that I felt like he had killed before and that was the reason he was holding back, because he didn't want to tell about everything. And so he said, yeah, you're right. I have killed before, and I did kill Mr. Compton."

Defendant also complained of testimony of Sheriff Hodges relating to his confession which occurred after they had taken a lunch break. The sheriff testified the interview with defendant continued over "probably two (2) to three (3) hours, because we did break for lunch and let him compose himself a little bit. He was pretty emotional." The sheriff testified that after the lunch break defendant was no longer crying and it got a lot better. Initially, after he came back with the jailer, he started answering the questions. Sheriff Hodges related that "the more we got into it, you know, it was catching up with him and, like I say, he was just unloading and he had this burden that was bothering him a lot about this murder and some others."

A further protest was to the State Attorney's final argument when she quoted Sheriff Hodges' comment, "Son, you killed before."

Our investigation of these complaints indicates initially that the issue was waived. There was no contemporaneous objection when any of these allegedly objectionable remarks were made. Defendant did not request the Court to instruct the jury to disregard comments about other killings. The record indicates that Sheriff Hodges was not being responsive to the State's questions when the reference to prior killings was made. There is no indication the State intentionally elicited these remarks. Moreover, this issue was not raised on the motion

for new trial. Certainly it would have been better if none of the remarks had been made; however, defendant cannot on one hand complain that in excluding Dr. Engum's testimony defendant was stripped of the power to describe to the jury the circumstances that prompted his confession and, on the other, complain about the admission of evidence which clearly demonstrated his mental condition as a significant factor in determination of voluntariness. Under the circumstances and evidence in this case we do not think these incidents constitute reversible error. We note that defense counsel as well as the Attorney General made inquiry with regard to the circumstances under which the confession was made.

■ Defendant contends the evidence adduced at trial was insufficient to support a finding by a rational trier of fact that the victim was killed intentionally, with malice, deliberation and premeditation. These contentions are not sustained by the record which clearly shows that defendant handcuffed the victim to a tree and choked him to death with a wire and slipknot. Defendant said first, that he did not intend to kill the victim, and second, that he committed the homicide because he became angry when the victim confessed he had sexually abused children at the school where he worked. There is evidence in the record to the effect that defendant came to Anderson County with the intent to rob and kill David Parten. He was armed with a gun and a knife. Fortuitous circumstances thwarted this course of action and brought the ultimate victim into defendant's path. The jury could reasonably assume that a theft and killing had been defendant's intent from the beginning. Only the victim changed. The substitution of a garrote as the instrument of death did not diminish the intent, the premeditation, or the deliberate homicide.

Defendant raises inferences of conflict in the evidence and testimony which, he claims, justified a directed verdict. We think not. The trial judge submitted the case to the jury and approved their verdict, thus accrediting the testimony of the State's witnesses and resolving all conflicts in favor of the State. Under the evidence in this record any

rational trier of fact could have found beyond a reasonable doubt that the defendant killed the victim and that the killing was malicious, premeditated and deliberate. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); T.R.A.P. 13(e).

We note that the trial court instructed the jury that "intent or desire to kill may be conceived and deliberately formed in an instant." This instruction, which was in accord with the case law at the time it was given, has been discussed at length in the recent case of *State v. Brown,* 836 S.W.2d 530 (Tenn.1992). What the Court said in *Brown* was, "[It] is now abundantly clear that the deliberation necessary to establish first degree murder *cannot* be formed in an instant. It requires proof, as the sentencing commission comment to § 39–13–201(b) further provides, that the homicide was 'committed' with 'a cool purpose' and without passion or provocation, which would reduce the offense either to second degree murder or to manslaughter, respectively." We conclude that the evidence in this case meets the *Brown* standard for premeditation and deliberation.

■ Defendant says the trial court erred by allowing certain irrelevant, prejudicial and misleading photographs of the victim to be introduced into evidence. He says the photographs which were entered into evidence were irrelevant, cumulative, and a waste of time. He cites the appropriate rules of evidence and *State v. Banks,* 564 S.W.2d 947, 949 (Tenn.1978) as authority. Several photographs are specifically objected to. The first is Exhibit 6 which is a picture of the victim during his lifetime wearing a watch similar to that found on his dead body. The watch also was introduced into evidence. While the relevance of this photograph is minimal, it certainly did not prejudice the defendant in any manner. The second photograph depicts the body of the victim in a hayfield where it was found. The picture was offered in evidence to establish the time of death by showing the clothing he was wearing at the time of his murder. The probative value of this Exhibit was not outweighed by any of the factors enumerated in Evidence Rule 403. We are

of the opinion it was properly admitted. There is some suggestion that there was an objection to the admission of Exhibits numbered 18.3 through 18.6. The record shows that the Court, in referring to collective Exhibit 18, denied the admission of these exhibits to the jury in any form. We find the issue without merit.

Defendant has made a complaint that the trial court erred by allowing the State to violate a preliminary order requiring counsel to approach the bench prior to introducing any photographs of the victim's body. This complaint is totally without merit. The record contains no evidence of defendant's allegations of violation of the court's ruling by the State's counsel. The trial court expressly found there was no breach of its ruling in spirit or by communications to the jury.

■ We find defendant's complaints in reference to the trial court's instructions to the jury to be without merit. Defendant asserts that the trial judge erred in not instructing the jury that aggravating circumstances should outweigh mitigating circumstances beyond a reasonable doubt. Defendant refers to T.C.A. § 39–13–204(g)[2] enacted by Ch. 591, Pub. Acts 1989, effective 1 November 1989, which amended the statute to require the jury to determine that any aggravating circumstances found to be proven by the State must outweigh any mitigating circumstances *beyond a reasonable doubt* in order to impose a death sentence. Prior to the enactment of Chapter 591, the statute only required the jury to determine that any aggravating circumstances were not outweighed by any mitigating circumstances and did not include the reasonable doubt provision. The offense for which defendant was convicted occurred before the effective date of the 1989 amendment, but the defendant was tried and sentenced after the effective date of that Act. The import of defendant's argument is that the 1989 amendment should have been applied to his case despite the fact the offense occurred before its effective date.

We initially point out that the defendant submitted a requested instruction as follows:

**2.** The statute was originally enacted as T.C.A. § 39–13–203 by the 1989 Act, and was redesig-

nated as T.C.A. § 39–13–204 by Ch. 1038, § 3 Pub. Acts 1990.

If you find that one or more aggravating circumstances exist, you cannot sentence the defendant to death unless you find that these aggravating circumstances outweigh the mitigating circumstances. Mitigating circumstances need not be *proved beyond a reasonable doubt,* but proof by a mere preponderance of the evidence is sufficient.

It is apparent this instruction omitted the reasonable doubt standard defendant now asserts was required. The trial court expressly told counsel that he would charge the first sentence but not the second. The instructions as given were not objected to at trial nor was the issue raised on motion for new trial.

■ Normally, defendant's failure to take any action to call this issue to the trial court's attention and his active procurement of an instruction he now claims is erroneous would preclude review on appeal. *See* T.R.A.P. 3(e) and 36(a). In the present case, however, if defendant was tried under law inapplicable to his case, his substantial rights may have been affected. Under these circumstances we exercise our discretion to review this issue in order to insure substantial justice is done. *See* T.R.Cr.P. 52(b).

■ This Court has previously held that there is no constitutional requirement that the State prove that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt before the death penalty may be imposed. *See State v. Payne,* 791 S.W.2d 10, 20–21 (Tenn.1990); *State v. Boyd,* 797 S.W.2d 589, 597 (Tenn. 1990). The defendant's right to a "reasonable doubt" charge therefore must depend on the 1989 Act. Thus, the question presented is whether the General Assembly intended that the amendments to the capital sentencing statute apply to cases arising before but tried after the effective date of amendment. Most statutes are presumed to operate prospectively unless the legislature indicates a contrary intention. *Cates v. T.I.M.E. DC, Inc.,* 513 S.W.2d 508, 510 (Tenn.1974); *Morford v. Yong Kyun Cho,* 732 S.W.2d 617, 620 (Tenn.App.1987); *see also United States v. Rewald,* 835 F.2d 215, 216 (9th Cir.1987); *State v. Sutherland,* 248 Kan. 96, 804 P.2d 970 (1991). We have found no retroactivity clause either specifically or expressly applicable to the 1989 amendments to the capital sentencing statute.

T.C.A. § 39–11–112, enacted as § 1 of Chapter 591 of the 1989 Acts, states specifically:

**Repealed or amended laws—Application in prosecution for offense.**—Whenever any penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, any offense, as defined by the statute or act being repealed or amended, committed while such statute or act was in full force and effect *shall be prosecuted under the act or statute in effect at the time of the commission of the offense.* Except as provided under the provisions of § 40–35–117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act. [Acts 1989, ch. 591, § 1.] (Emphasis supplied.)

T.C.A. § 40–35–117, enacted as Ch. 591, § 6, Pub. Acts 1989, and a part of the Criminal Sentencing Reform Act of 1989, provides in subsection (b) for the sentencing of persons for offenses committed between 1 July 1982 and 1 November 1989 under the 1989 Act except where constitutionally prohibited. Sentencing Commission Comments to T.C.A. § 40–35–117 and 118, however, indicate that first degree murder is excluded from the provisions of these sections. We, therefore, find controlling the general provisions of § 39–11–112 and the principles against retroactive application of statutes. The trial court correctly instructed the sentencing law in effect at the time the murder was committed.

■ Defendant says he was prejudiced by failure to instruct mitigating circumstances raised by the evidence. He refers specifically to T.C.A. § 39–13–204(j)(2), that the murder was committed while defendant was under the influence of extreme mental or emotional disturbance, and T.C.A. § 39–13–204(j)(8), the capacity of the defendant to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect. The trial court

declined to instruct the jury on these factors because he found no evidence in the record that *as a result* of mental disease the defendant could not conform his conduct to the requirements of the law. Defendant argued that the testimony of his witness, Dr. Eric Engum, a clinical psychologist and a licensed attorney, was sufficient to require an instruction on this mitigating circumstance. Dr. Engum testified that defendant was angry and impulsive and prone to outbursts of temper as the result of a personality disorder. The trial court was of the opinion that the disorder was prevalent even among law abiding persons, and in the absence of specific proof or a statement of causation about the relationship between the disorder and the offense, the instruction was not warranted. We do not find anything in the record to dispute this finding. The issue is without merit.

■ Defendant insists the jury was inadequately instructed as to the meaning and function of mitigating circumstances. He says the trial judge did not define the term mitigating beyond the reference to any aspect of defendant's character or record, or "any aspect of any circumstances of the offense favorable to the defendant which is supported by the evidence." The trial judge followed the statute in delivering his instructions. Defendant was allowed to introduce such proof as he saw fit in mitigation. We are satisfied that the instruction was sufficient and appropriate. See *State v. Bell,* 745 S.W.2d 858, 864 (Tenn.1988).

■ The trial judge instructed the jury that they should have no sympathy or prejudice or allow anything but the law and the evidence to have any influence upon them in determining their verdict. Defendant avers that this instruction prevented the jury from considering and giving effect to his evidence in mitigation. Defendant takes a negative approach to our rejection of a similar complaint in *State v. Boyd,* supra, in which the Court cited from *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), inter alia, "it is no doubt constitutionally permissible, but not constitutionally required, see *Gregg v. Georgia,* 428 U.S. 153, 189–195, 96 S.Ct. 2909, 2932–2935, 49 L.Ed.2d 859

(1976), . . . for the State to insist that 'the individualized assessment of the appropriateness of the death penalty be [a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence],'" citing Justice O'Connor, concurring, in *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987). The issue is without merit.

■ Defendant says there is a reasonable likelihood that the jury understood the trial court's instructions as precluding them from considering any mitigating circumstances unless they unanimously agreed on its existence. We do not agree. As we noted in *State v. Bates,* 804 S.W.2d 868 (Tenn.1991), cert. denied —— U.S. ——, 112 S.Ct. 131, 116 L.Ed.2d 98 (10/7/91), there is nothing in the Tennessee statutes, in the instructions given to the jury, or in the verdict form submitted to the jury, likely to lead any juror to believe that he or she was precluded from considering mitigating circumstances unless all jurors agreed that such circumstance existed. In this instance, too, no objection was raised at trial and the issue was not raised in the motion for new trial.

■ Defendant states a number of issues, or sub-issues, involving the aggravating circumstance found in this case, (i)(7) (the murder occurred during a robbery) beginning with the charge that the trial court committed reversible error by failing to instruct the elements of robbery at the penalty phase. It is true that he did not. This was error. However, the Court previously defined robbery in its guilt phase instructions on felony murder. The error was harmless. *State v. Wright,* 756 S.W.2d 669, 675 (Tenn.1988).

■ Defendant questions whether the evidence is sufficient to support the aggravating circumstance of murder in the perpetration of robbery. Citing *State v. Terry,* 813 S.W.2d 420, 423 (Tenn.1991), he says there is no proof of motivational relationship between the homicide and the felony. It is argued that the victim's truck and other property were taken only as an afterthought to the murder, which occurred because of defendant's inappropriate intense anger and lack of control. The evidence clearly bears out

that a reasonable jury could conclude defendant left Alabama with the intent to steal a motor vehicle and, when he was unable to accomplish the theft of David Parten's Porsche, he then victimized Rodney Compton, whom he strangled during the course of the robbery.

Defendant returns to plow the ground of aggravating and mitigating circumstances, arguing that the evidence does not support the jury's finding. There is no doubt that the evidence clearly supported the jury's verdict. The jurors were justified in rejecting his theory of the homicide: that he killed the victim in angry rage. The jury was not required to accept his version of the events.

Defendant argues that the sentence of death is excessive and disproportionate to the penalty imposed in similar cases. T.C.A. § 39–13–206(c)(1)(D) requires this Court to review the sentence of death to make that determination, considering both the nature of the crime and the defendant. Defendant seems to imply that this Court is limited to using in comparison only those cases in which the same aggravating factors are found. Of course, to do so would limit the proportionality review which is required of the Court. As defendant reminds us, what is important is an individualized determination based on the character of the individual and the circumstances of the crime. Insofar as the defense in this case is concerned, defendant's confession includes the admission that when he was invited into the victim's pickup truck, he got into the truck with the intention to rob him. He also stated that the victim made homosexual advances toward him and masturbated him. When that act was concluded he placed a pair of handcuffs on the victim and put him back in his truck. He drove the two of them to another location where, he says, he intended to leave him unhurt. The victim began a loud outcry during which he admitted engaging in sexual abuse of children at the school where he worked as a teacher. This angered defendant, who then handcuffed the victim to a tree and began choking him. When he would not be quiet, defendant found some wire on the ground and wrapped it around his neck several times. He put a slip knot around the victim's neck and kept pulling on it. When the victim finally went limp, defendant says he thought the man passed out and tried to loosen the knot but could not get it loose. He observed the victim was not breathing and thought he was dead. He was scared they might be seen. He put the man back into the pickup truck and drove off to the place several miles down the road where Mr. Compton's body was subsequently found. He cut the wire off his neck with a hunting knife he carried, unlocked the handcuffs, covered the body with some hay and then returned to Birmingham, Alabama in Compton's pickup. He also had some of the victim's clothes and his wallet. He was subsequently apprehended in Refugio County, Texas, for speeding while driving the stolen truck. This admission, in conjunction with the other evidence and testimony in the record, was sufficient for the jury to find that defendant was guilty of first degree premeditated murder committed while he was engaged in committing a robbery, as opposed to the defense version of the circumstances of the offense.

Defendant says the homicide was not in furtherance of the robbery but was a separate, distinct and independent event produced by his mental disorder. Dr. Eric Engum testified to the background and psychological impairments of the defendant based on his early childhood background and records from earlier mental examinations. Dr. Engum diagnosed the defendant to be suffering from borderline personality disorder, a condition characterized by impulsive and unpredictible behavior, emotional withdrawal, marked shifts in behavior and attitude, intense anger, suicidal gestures, and the inability to maintain any kind of enduring relationship with others. He opined that the defendant adjusted well to institutionalization, where there was external control. He was not aggressive or violent in such an environment and only had difficulties when released.

The State presented Dr. Samuel Craddock, a clinical psychologist at the Middle Tennessee Mental Health Institute, who had observed the defendant for over two months. Dr. Craddock described the defendant as cooperative for most part during evaluation

although he may have been exaggerating some symptoms of mental illness. His IQ was 100. The jury heard all of this evidence and had the opportunity to observe the defendant's manner and demeanor during his testimony in open court. We cannot say from our review of this record that their judgment was inappropriate.

Defendant cites a number of cases in which the death sentence was based on the same aggravating circumstance involved in this case. He argues there is no indication in any of these that the defendant presented evidence of significant psychological impairment stemming from abuse and neglect when they were children. This has become a not uncommon defense in cases of this nature.[3] It is a defense to which the trial court and jury must give due consideration and one which this Court must scrutinize carefully in carrying out a proportionality review. These precautions were observed in this case. We find that the sentence of death was not imposed arbitrarily. The evidence supports the jury's finding that the murder was committed while defendant was engaged in committing a robbery and the absence of any mitigating circumstance sufficiently substantial to outweigh the aggravating circumstance found. Having considered the facts and circumstances of the offense, as well the background and nature of defendant, we hold that the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases.

Defendant says the prosecution's misleading arguments in the penalty phase of the case undermined the reliability of the jury's sentencing determination.

The defendant raises these issues for the first time in this Court. No contemporaneous objections were made at trial nor were the issues raised on the motion for new trial. Nonetheless, we have examined the errors charged and find them to be without merit.

■ Defendant says the prosecution argument shifted the burden of proof. The prosecutor stated during argument that in order to impose a life sentence, if the jury found an aggravating circumstance had been proved beyond a reasonable doubt, the jury would have to find that mitigating circumstances outweighed aggravating circumstances. This was an accurate statement of the law in effect at the time of the trial of this case. This argument did not shift the burden of proof. *See State v. Boyd, supra; State v. Cauthern,* 778 S.W.2d 39, 47 (Tenn. 1989).

■ It is complained the State's argument "that there were no mitigating circumstances in the case and that Dr. Engum's testimony concerning the defendant should be entitled little weight" limited the jury's consideration of mitigating factors. This argument did no more than set out the State's interpretation of the proof.

■ Defendant says here that the prosecution's argument purposely confused the issue of culpability with criminal responsibility. The State argued to the jury, "There comes a time when you become responsible for your actions. I'm going to talk about responsibility. There comes a time where you just can't deny the responsibility as an adult. David Brimmer is a human being who must accept responsibility for his actions." It is defendant's position that he became criminally responsible for his actions when the jury convicted him. In the penalty phase the jury was required to make a moral inquiry into personal culpability, and to give individualized consideration to the defendant's background and character in making the determination that death was the appropriate penalty. He says the prosecution arguments could easily have misled the jury to believe that unless the death penalty was imposed defendant was not being held responsible for his behavior.

Our legal dictionary defines "culpable," in the criminal sense, to be "involving the breach of a legal duty or the commission of a fault," while "responsible" is defined in that sense as being "legally accountable or answerable." *Black's Law Dictionary* 379, 312 (6th Ed.1990). It is doubtful that the jury made the difference in their interpretation of

3. *See State v. Irick,* 762 S.W.2d 121 (Tenn.1988); *State v. Jones,* 789 S.W.2d 545 (Tenn.1990); *State v. Bates,* 804 S.W.2d 868 (Tenn.1991); *State v. Smith,* 868 S.W.2d 561 (Tenn.1993).

the meaning to be given the State Attorney's words. However, looking at the argument as a whole, it appears to be the State's interpretation of the proof. Taken in context it appears that this argument went to the weight to be accorded the psychological factors urged in mitigation, i.e., the defendant had a bad childhood, which should excuse his actions in the premises. We look upon this argument to be a foray attacking defendant's personal blameworthiness or culpability.

■ The defendant next argues that the State Attorney exceeded the bounds of closing argument by stating the case should not be decided on the basis of sympathy for the defendant. We have discussed this issue heretofore. This comment in the State's argument was closely followed by the admonition to the jury to decide the case on the basis of the law and facts. This was appropriate argument.

■ Additionally, defendant complains that the prosecutor improperly diverted the jury's attention away from the defendant by invoking the memory of the victim. Defendant concedes that *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), upon which he relies, has been overruled. He suggests that we should find the argument in violation of Article I, Secs. 8 and 16 of the Tennessee Constitution. We decline that invitation. We consider the law on this issue to be well stated in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

■ Defendant says the selection of the defendant as a candidate for the death penalty was arbitrary and capricious and resulted from an abuse of prosecutorial discretion. This issue is raised and presented for the first time in this Court. There is nothing in the record to support the facts on which the defendant relies. This argument is basically an attack on the "unlimited discretion vested in the prosecutor" as a violation of the principles stated in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This argument has been rejected by the United States Supreme Court. In *Gregg v. Georgia,* 428 U.S. 153, 198–99, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976), the Court specif-

ically noted that opportunities for discretionary action which inhere in processing of a murder case ..., including authority of the state prosecutor to select those persons whom he wishes to prosecute for a capital offense, ... do not render the death penalty unconstitutional on the theory that the opportunities for discretionary action render imposition of the death penalty arbitrary or freakish. We apply that rule in this case.

Defendant makes a broad based attack on the constitutionality of the Tennessee Death Penalty Statute. The principal arguments made on this issue are identical to or similar to issues previously addressed by the Court. The majority of these complaints are not personal to the defendant and have no effect on the outcome of this case. He makes reference to the aggravating circumstances set forth in T.C.A. § 39–13–204(i). He first complains of subsection (i)(6) (murder committed to avoid a lawful arrest or prosecution). Although the State sought the death penalty on (i)(6) in this case, the jury only found (i)(7) (the murder was committed while defendant was engaged in committing a robbery). He says the (i)(7) aggravating circumstance has been construed and applied in such a manner as to be synonymous with the felony murder rule. However, the jury in this case found defendant guilty of premeditated murder. The analogy is inappropriate. He alleges that circumstance (i)(5) is unconstitutionally vague or overbroad. The jury did not find this aggravating circumstance against him. He makes a sweeping charge that in combination, subsections (i)(2), (5), (6) and (7) encompass a majority of the homicides committed in Tennessee and results in the same wanton and freakish imposition of the death penalty upon a randomly selected handful of offenders as was found objectionable in *Furman v. Georgia,* supra. The above combination did not effect the judgment in defendant's case and does not warrant further discussion beyond the fact that this argument has been repeatedly rejected by this Court.

Defendant avers that the Tennessee Death Penalty Statute is imposed capriciously and arbitrarily because defendants may not address issues of parole eligibility, costs of

imposing the death penalty, deterrent effect of the death penalty and cruelty of the method of execution. He finds fault with the instructions submitted to the jury in capital cases to the effect that jurors may rely upon their own common knowledge and experiences in reaching their verdict. He argues that these various restrictions violate the preference for a broad range of sentencing information as expressed in *Gregg v. Georgia,* supra, and cites various decisions from other states and law journal articles to sustain this theory of defense, ignoring the decisional law in this State on these issues.[4]

He urges that this Court reconsider past decisions on the issue of whether or not the jury should be told the effect of its failure to agree on a verdict. We are satisfied that our past decisions on this issue meet both State and Federal muster. *See State v. Barber,* 753 S.W.2d 659, 670–671 (Tenn.1988).

 He argues the jury is instructed that it must agree unanimously in order to impose a life sentence and is prohibited from being told the effect of a non-unanimous verdict. He suggests this rule violates the principle of *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), and *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). These cases stand for the principle that any requirement that the jury must find a mitigating circumstance unanimously before it can be considered violates the Eighth Amendment. A requirement of a unanimous verdict does not violate these principles. As this Court said in *State v. King,* 718 S.W.2d 241, 249 (Tenn.1986), "[t]here is no way a jury can impose a sentence if it is not unanimous in its decision." T.C.A. § 39–13–204(h) specifically provides that if the jury cannot ultimately agree as to punishment the trial judge shall dismiss the jury and impose a

sentence of life imprisonment. *See State v. Thompson,* 768 S.W.2d 239, 252 (Tenn.1989).

Defendant argues a number of issues which have long been settled by this Court. He says there is reasonable likelihood that jurors believe they are required to unanimously agree as to the existence of mitigating circumstances because of the failure to instruct on the meaning and function of mitigating circumstances. We have previously responded to this issue in this opinion. He argues the jury is not required to make the ultimate determination that death is the appropriate penalty. This issue has been considered and rejected in numerous cases. *See State v. Black,* supra.

The Constitution does not require and the Court does not approve the uniform standards or procedures for qualifying juries in capital cases which defendant requests. Defendant raises a variety of generalized issues which do not merit response because they have previously been considered in this opinion or have been decided adversely to defendant's position heretofore.[5] Defendant deprecates appellate review of capital sentences in Tennessee for several reasons. He says there is no requirement for written findings concerning mitigating circumstances. This argument was rejected in *State v. Melson,* 638 S.W.2d 342, 368 (Tenn.1982). He says information relied upon for comparative review is inadequate and incomplete. His particular complaint is that Rule 12 reports filed by the trial judge do not contain sufficient information for determination of whether a death sentence is excessive or disproportionate. The simple answer to this complaint is that use of the trial judge's Rule 12 report by this Court is only one facet of the Court's appellate review. T.C.A. § 39–13–206 is explicit in its directions to the Court in making its proportionality review to determine whether the sentence of death is excessive or disproportionate to the penalty imposed in

4. *See State v. Johnson,* 632 S.W.2d 542, 547–548 (Tenn.1982); *State v. Adkins,* 725 S.W.2d 660, 664 (Tenn.1989); *State v. Black,* 815 S.W.2d 166, 179 (Tenn.1991).

5. Denial to defendant of final closing argument at the penalty phase; *see State v. Thompson,* 768 S.W.2d 239, 252 (Tenn.1989). The death penalty is inflicted based on economic, racial, geographi-

cal, and gender discrimination. Defendant has presented no evidence on this issue. *See generally, McClesky v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *State v. Porterfield,* 746 S.W.2d 441, 451 (Tenn.1988). Electrocution is cruel and unusual punishment. This argument was rejected by a majority of this Court in *State v. Black,* 815 S.W.2d 166, 178–179 (Tenn.1991).

similar cases considering the nature of the crime and the defendant. The Court has made its individualized determination on the basis of the evidence contained in the record of the case and in accordance with the statute.

■ Finally, defendant has raised an issue of first impression alleging in part that the death penalty per se and as applied violates Article I, Sec. 32 of the Tennessee Constitution. Defendant hypothesizes that Article I, Sec. 32 was meant to proscribe "government-sponsored vengeance against those the government considered outside its law." He then argues that in light of a contemporary standard of humanity and the main purpose of the death penalty (retribution), the death penalty is therefore inhumane and a form of "government-sponsored vengeance." Article I, Sec. 32 provides in its entirety: "That the erection of safe and comfortable prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for."

We preface our consideration of this issue with the verity that the federal government has, by and large, preempted both the operation and construction of the prison system in the State of Tennessee to the extent that its supervision has been under federal control and the State has had very little to say about the treatment of prisoners in any respect. We do not believe the treatment of prisoners in this State falls outside the parameters described by defendant, which must be drawn in accordance with "evolving standards of decency that mark the progress of a maturing society."

Insofar as the issue of whether or not the death penalty constitutes cruel and unusual punishment is concerned, this Court has repeatedly held that this State is not prohibited from imposing the death penalty in the manner set forth in conformity with the penal statutes, by the restraints imposed by the United States Constitution, or by any of the provisions of the Tennessee Constitution previously considered. We hold that Article I,

Sec. 32 does not add any additional restriction.

In accordance with the mandate of T.C.A. § 39-13-206 we find that the sentence of death was not imposed in an arbitrary fashion; that the evidence supports the jury's finding of the aggravating circumstance that the homicide was committed while defendant was engaged in committing a robbery; that the evidence supports the jury's finding of the absence of any mitigating circumstances sufficiently substantial to outweigh the aggravating circumstance found. Our comparative proportionality review convinces us that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering the nature of the crime and the defendant.[6] The sentence of death will be carried out as provided by law on the —— day of _____, 1994, unless otherwise ordered by this Court or other proper authority. Costs on this appeal are adjudged against the defendant.

DROWOTA and ANDERSON, JJ., concur.

REID, C.J., files separate concurring and dissenting opinion.

DAUGHTREY, J., files opinion concurring in part and dissenting in part.

REID, Chief Justice, concurring and dissenting.

I concur with the conclusion reached by the majority that the record supports the conviction of premeditated first degree murder.

I join Justice Daughtrey's dissent that the failure of the trial court to charge mitigating circumstance (j)(8) requires a re-sentencing hearing. T.C.A. § 39-2-203(j)(8) (1982) provides:

The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a

---

6. *State v. Poe,* 755 S.W.2d 41 (Tenn.1988) similar brutal murder; *State v. Carter,* 714 S.W.2d 241 (Tenn.1986) murder to steal car; *State v. Zagorski,* 701 S.W.2d 808 (Tenn.1985) murder to steal

money; *State v. Caldwell,* 671 S.W.2d 459 (Tenn. 1984) similar claim by defendant that victim made sexual advances; *State v. Morris,* 641 S.W.2d 883 (Tenn.1982).

defense to the crime but which substantially affected his judgment.

A clinical psychologist, who had examined the defendant and studied his records from earlier mental examinations, diagnosed the defendant as suffering from borderline personality disorder, a condition characterized by impulsive and unpredictable behavior, emotional withdrawal, marked shifts in behavior and attitude, intense anger, suicidal gestures, and the inability to maintain any kind of enduring relationship with others. After having been abandoned as a small child, the defendant was placed with various foster families, until, at the age of 13, he was placed in an institution for children with behavioral problems, where he remained for four years. The records of that institution describe the defendant as suffering "burned child syndrome," a condition characterized by feelings of fear and internal anger generated by parental abandonment. Later, while hospitalized in the psychiatric unit of a Texas hospital, the defendant was diagnosed as having "factitious disorder," a condition where the sufferer seeks to play the role of patient because of the absence of any emotional connections with others. While incarcerated awaiting trial, he was sent to the Lakeshore Mental Health Center in Knoxville because of suicidal behavior. This evidence was proof that the defendant suffered a mental disease.

However, the majority opinion approves the trial court's refusal to charge mitigating circumstance (j)(8) because there was no proof that, *as a result* of the mental disease, the defendant could not conform his conduct to the requirements of the law. Of course, proof that the killing was the *result* of a mental disease would be proof of insanity and the defendant would be entitled to a verdict of not guilty by reason of insanity.

Insanity is a defense to prosecution if, at the time of such conduct, as a result of mental disease or defect, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of law.

T.C.A. § 39–11–501(a) (1991); *Graham v. State,* 547 S.W.2d 531, 543 (Tenn.1977).

In all criminal cases in which the trial judge charges the jury on the law relating to the defense of insanity, the judge shall also charge the jury that if it should find the defendant to be not guilty by reason of insanity that it shall so state in its verdict.

T.C.A. § 40–18–117 (1990). By requiring proof that the defendant could not conform his conduct to the requirements of law, *supra* at 13–14, the majority seems to eliminate any mental condition less severe than insanity as a mitigating circumstance.

I would remand for re-sentencing, because the failure to charge mitigating circumstance (j)(8) was reversible error.

DAUGHTREY, Justice, concurring in part and dissenting in part.

The defendant was convicted of the premeditated murder of Rodney Compton and was sentenced to death based on a single aggravating circumstance, the fact that he killed the victim while committing robbery. Most of the alleged trial errors that serve as the basis for this appeal are, as the majority concludes, meritless challenges to the guilt and sentencing phases of his trial. One, however, deserves the Court's careful attention. During the sentencing hearing the trial court refused to instruct the jury that it was permitted to consider as mitigating evidence any mental disease or defect that substantially impaired Brimmer's ability to appreciate the wrongfulness of his conduct or to conform his conduct to the law. *See* T.C.A. § 39–2–203(j)(8) (1982), *amended by* T.C.A. § 39–13–204 (1992). This failure to instruct the jury on this mitigating evidence denied the defendant his right to have the jury charged on every defense to the death penalty raised by the evidence and, therefore, denied the defendant substantial justice. Because of this error, I would remand this case to the trial court for resentencing.

It is fair to conclude, as the majority does, that the proof at trial was sufficient to convict Brimmer of premeditated murder. The majority opinion, however, fails to summarize that evidence. The record shows that the defendant, an unemployed drifter, was stopped in February of 1990 for speeding in

Texas after leading the Texas authorities on a twenty-mile high-speed chase. The police determined that the defendant was driving Rodney Compton's truck and, after contacting the Tennessee authorities, discovered that Compton had been murdered in October of 1989. The Texas police tried to interview Brimmer several times, but Brimmer gave false names and provided no information. After about 20 days in solitary confinement, however, the defendant confessed to the Compton murder. Moreover, as the police transported him to Tennessee, he identified the site of the murder.

The defendant admitted the killing, but denied planning the murder. Instead, he said that Compton offered him a ride and insisted that he accepted with the intent only to rob Compton. Brimmer stated that Compton made sexual advances toward him, and that the defendant then handcuffed Compton, intending to leave him unharmed in a park. According to the defendant, however, when Compton began to tell the defendant about his sexual abuse of children, the defendant grew angry and choked Compton to death. Then, frightened that someone might have seen him at the site of the murder, he drove Compton's body to the field where it was later discovered.

Other evidence, however, supported the state's theory that the defendant had planned both the robbery and the murder. Ann Marie Hill testified that the defendant had lived with her in Alabama before the murder, but that he was known to her by a different name. Ms. Hill testified that Brimmer told her before the murder that he intended to pick up his Porsche in Tennessee. She testified that she drove Brimmer part of the way to Tennessee on the afternoon of October 21, 1989, and that he carried a gun and a large knife on the trip. David Parten, the defendant's former cellmate, testified that he previously had told the defendant about a Porsche that Parten owned, and that the

defendant had arranged to meet Parten in Oak Ridge around October 22. Parten testified that he met Brimmer once in Oak Ridge, but decided not to meet him again because he felt uneasy about the situation. From the testimony of these two witnesses, the jury could have inferred that Brimmer drove to Tennessee with the intent to steal Parten's car and that he resorted to the robbery and murder of Compton only after Parten failed to show up.

In addition to this testimony, the victim's mother and brother stated that on October 22, Compton had been returning home from a vacation to celebrate his mother's birthday and thus, impliedly, would not have been searching for a sexual encounter. Additional evidence indicating that Brimmer gave false names to everyone he met and repeatedly lied about his background weakened his credibility and diminished the likelihood that his story was true. The evidence was sufficient for the jury to have found him guilty of premeditated murder.

Despite the sufficiency of the evidence, the Court should not overlook the trial court's failure to instruct the jury, in accordance with T.C.A. § 39–2–203(j)(8) (1982),[1] that it must consider any evidence that

[t]he capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment.

During the sentencing hearing, Brimmer presented the testimony of Dr. Eric Engum, a clinical psychologist, who concluded that the defendant was suffering from a borderline personality disorder marked by sudden changes in behavior, intense anger, suicidal attempts, and the inability to maintain relationships. Dr. Engum testified that between 500,000 and two million people in the United

---

1. The defendant was sentenced in March of 1991. At that time, the capital sentencing statute had been amended since the date of his offense, and is now codified as T.C.A. § 39–13–204 (1991). However, in implementing the new statute, the General Assembly specifically provided in T.C.A. § 39–11–112 (1991) that "any offense, as defined by the statute ... being ... amended, committed while such statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense." This statute apparently requires the application of the capital sentencing statute in effect at the time of Brimmer's offense.

States probably suffer from this disorder, and that many of these people violate the law. The trial court, however, concluded that the defendant's disorder was common, that it was "not quite" a mental disease or disorder, and that Dr. Engum did not state the "magical words" that the disease "caused" the defendant to commit the crime. The trial judge therefore refused to instruct the jury on this mitigating evidence.

Although the defendant requested this instruction at trial, he failed to present the issue of the denial of the instruction in his motion for a new trial. On appeals as of right, Tenn R.App.P. 3(e) provides that:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in ... jury instructions granted or refused, ... unless the same was specifically stated in a motion for a new trial.

Nevertheless,

> [a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial ... where necessary to do substantial justice.

Tenn.R.Crim.P. 52(b). Such error, called "plain error," can therefore be noticed by an appellate court despite the failure to include the issue in the motion for a new trial.

The trial court plainly erred by refusing to instruct the jury on a matter that is indisputably fundamental in a capital case—the jury's consideration of the mitigating evidence. The capital sentencing statute in effect at the time of Brimmer's offense provided that "the trial judge shall include in his instructions for the jury to weigh and consider any mitigating circumstance ... which may be raised by the evidence...." T.C.A. § 39–2–203(e) (1982) (amended 1989). Dr. Engum testified extensively on the defendant's psychological background and concluded that he suffered from a borderline personality disorder that did affect his judgment. Certainly the jury was entitled and, pursuant to the statute, *required* to consider whether this disorder substantially impaired "the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." Under the circumstances of this case, the failure to instruct the jury on this mitigating evidence clearly violated the sentencing statute. By failing to instruct the jury on "fundamental" evidence required by statute, the court denied the defendant substantial justice, as it is defined in Tennessee case law.

In my judgment, the only appropriate remedy for this error is a remand of this case to the trial court for resentencing.

### ORDER ON PETITION TO REHEAR
Filed May 2, 1994.

Defendant has filed a respectful petition to rehear which the Court has considered and finds that the petition does not contain new material or argument which warrants reconsideration.

The petition to rehear is denied.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.