# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 2, 2010

## STATE OF TENNESSEE v. ELLIOT FULLILOVE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-09508      W. Otis Higgs, Jr., Judge**

---

**No. W2009-01113-CCA-R3-CD   -   Filed November 2, 2010**

---

The defendant, Elliot Fullilove, was convicted of first degree (felony) murder and especially aggravated robbery, a Class A felony. He was sentenced to concurrent life sentences. On appeal, he argues that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion to suppress a statement he made to the police, in admitting hearsay, and in admitting a crime scene photograph. After careful review, we affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and CAMILLE R. MCMULLEN, JJ., joined.

Juni Ganguli and Ruchee Patel, Memphis, Tennessee, for the appellant, Elliot Fullilove.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Nicole Germain and Kate Edmandss, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The body of the victim was found in a hotel room on the morning of June 2, 2006. Testimony at trial revealed that "there was nothing really in that room that was not blood spattered." The defendant became a suspect after police spotted him driving the victim's white Mercury Cougar on June 7, 2006. When police stopped the defendant, his passenger exclaimed, the defendant "killed a guy, took the guy's car, I ain't got nothing to do with it." After the defendant and his passenger were taken into custody, they were advised of their *Miranda* rights. The defendant first told the police how he came to possess the victim's car and said his girlfriend, Serena Carter, would corroborate his story. When his girlfriend failed

to corroborate the story, the defendant changed his story. Eventually, the defendant admitted to hitting the victim with a shotgun and claimed he did so in self-defense because the victim tried to stab him with a knife. He acknowledged that he hit the victim with the shotgun eight or nine times. At the conclusion of his interview with the police, he stated, "This wasn't my idea. I didn't know [the] dude. Serena had called him. Our intentions was robbing him."

Analysis

The defendant raises four issues on appeal. First, he argues that the evidence was insufficient to support his convictions. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

The defendant was charged with and convicted of especially aggravated robbery and first degree (felony) murder. Especially aggravated robbery is robbery accomplished with violence or a deadly weapon that results in severe bodily injury to the victim. T.C.A. § 39-13-403 (2006). The killing of another committed in the perpetration of a robbery constitutes first degree felony murder. T.C.A. § 39-13-202 (2006).

The defendant argues that his version of events renders the conviction evidence insufficient. Specifically, he contends that the State "cherry-picked" the evidence to submit for DNA analysis, which deprived him of an opportunity to confirm his version of events. He also argues that the statements made by his passenger after they were arrested in the victim's car lacked credibility.

The proof at trial demonstrated that the defendant bludgeoned the victim and took his car. The defendant admitted that he hit the victim with the shotgun after the victim allegedly struck him with a knife. No knife was recovered from the victim's room, and the officers who arrested the defendant did not observe any defensive wounds on the defendant. The defendant stated that he and his girlfriend went to the victim's room to rob him. Testimony at trial revealed that the victim was beaten to death with a shotgun. Further testimony revealed that the victim was in a kneeling position for the majority of the beating. The medical examiner testified that the victim's body revealed at least twenty-nine separate lacerations from twenty-nine separate blows. One of the blows left a metal fragment, the hammer of a shotgun, imbedded in a wound to the back of the victim's skull. After the killing, the defendant took the victim's car, which the police found him driving several days later. Though the defendant now relies on his story of self-defense, he recanted some of his story during his testimony at trial and acknowledged that his story about the victim swinging at him with a pocket knife was not true.

The defendant testified at trial that the victim attacked him with a knife when he returned to the hotel room after a trip to the car to retrieve a bag containing a shotgun that he alleged the victim was interested in purchasing. He said that his girlfriend was on her knees and crying when he returned to the hotel room. The defendant testified that the victim pushed him, put him in a "bear-hug," pulled a knife, and stuck him in the hand. He claimed that he wiped his hand off on his own shirt, a hotel towel, and his girlfriend's jeans. The defendant claimed that he grabbed the shotgun and hit the victim nine or ten times before the victim ceased to get up. He claimed that he took his girlfriend's daughter to the car and that, when his girlfriend joined them in the car, she had blood on her pants. He said the victim was still alive when he left the hotel room, but he did not contact the police. The defendant testified that he hid the shotgun in Arkansas in an abandoned apartment.

The State argues that the jury heard all the evidence, including the defendant's testimony about his version of events, and resolved the credibility determinations against the defendant. Any credibility concern regarding the defendant's and the State's versions of events was resolved by the jury verdict. The defendant was in possession of the victim's car several days after the killing and admitted to police that he intended to rob the victim. The evidence presented at trial was sufficient to support the defendant's convictions.

Next, the defendant argues that the trial court erred in denying the motion to suppress his statements to police because he contends they were given after coercion. The trial court's determination at the suppression hearing that a confession was voluntary is presumptively correct on appeal. *State v. Stephenson,* 878 S.W.2d 530, 544 (Tenn. 1994). This determination is binding unless the evidence in the record preponderates against that finding. *State v. Carter*, 988 S.W.2d 145, 149 (Tenn. 1999).

The fact that one suffers from certain mental deficiencies does not necessarily prevent that person from understanding and waiving constitutional rights. *See generally State v. Middlebrooks*, 840 S.W.2d 317, 327 (Tenn. 1992); *IV Wharton's Criminal Evidence* § 643, p. 169 (14th ed. 1987). A person with a mental deficiency may waive his *Miranda* rights if that waiver was knowingly and voluntarily made. *State v. Green*, 613 S.W.2d 229, 233 (Tenn. Crim. App. 1980); *Braziel v. State*, 529 S.W.2d 501, 505-06 (Tenn. Crim. App. 1975). When determining whether an accused has voluntarily, knowingly, and intelligently waived his *Miranda* rights, this court must consider the totality of the circumstances which existed when the accused waived these rights. *Middlebrooks*, 840 S.W.2d at 326; *State v. Benton*, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). The totality of the circumstances must reveal an uncoerced choice and the required level of comprehension. *State v. Blackstock*, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting *State v. Stephenson*, 878 S.W.2d 530, 545 (Tenn. 1994)). When a defendant contends that his waiver of *Miranda* rights was not voluntarily or understandingly made, the court must consider such factors as the defendant's age, level of functioning, prior criminal justice experience, demeanor, responsiveness to questioning, possible malingering, and the manner in which the *Miranda* rights were explained. *Blackstock*, 19 S.W.3d at 208. However, no single factor is necessarily determinative. *Id*.

The test of voluntariness under the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the United States Constitution. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994). In order to make the determination, the particular circumstances of each case must be examined. *Monts v. State*, 218 Tenn. 31, 400 S.W.2d 722, 733 (1966). Coercive police activity is a necessary prerequisite in order to find a confession involuntary. *State v. Brimmer*, 876 S.W.2d 75, 79 (Tenn. 1994). The crucial question is whether the behavior of the state's officials was "such as to overbear [the] petitioner's will to resist and bring about confessions not freely self-determined." *State v. Kelly*, 603 S.W.2d 726, 728 (Tenn. 1980) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544). The question must be answered with "complete disregard" of whether or not the accused was truthful in the statement. *Rogers*, 365 U.S. at 544.

The motion to suppress in this case was made pretrial and was denied following a hearing. The defendant was driving the victim's car when he was arrested. The defendant was advised of his rights when he was taken into custody at 7:35 P.M., and he waived those

rights. Following that discussion with police, he told them that his girlfriend would corroborate his story and, then, the conversation with police ended. After his girlfriend failed to corroborate his story, he was again advised of his rights before further questioning. During the next conversation with police, he admitted to participating in the robbery and to beating the victim, which resulted in the victim's death. He reviewed the five-page statement and signed it at 2:25 A.M. on June 8, 2006.

The defendant contends that during a seven-hour interrogation, he was shackled by his leg to a bench and was not allowed to lie down, sleep, or have a meal. On appeal, he contends that his statement of confession was involuntary. The officer who took the statements testified that the defendant gave four different statements over the time period and that each statement was checked for accuracy. He testified that they took a break in questioning around 8:00 P.M., when the defendant told them that his girlfriend would corroborate his story that he got the victim's car from a friend. The defendant was given food and drink and was offered bathroom breaks. The defendant's girlfriend was questioned, and their stories did not agree.

The defendant argues that the totality of the circumstances of his interrogation supports a conclusion that his statement was involuntary. Because the trial court determined at the suppression hearing that the confession was voluntary, we are bound by that determination unless the evidence in the record preponderates against that finding. *Carter*, 988 S.W.2d at 149. The defendant has not offered any proof which preponderates against the finding of the trial court and is, therefore, not entitled to relief on this issue.

Next, the defendant argues that the trial court erred in allowing a hearsay statement to be introduced during a police sergeant's trial testimony regarding a telephone call about the defendant. Specifically, the defendant contends that Tennessee Rule of Evidence 803 does not reference "opening the door" as a valid exception to the hearsay rule and argues that it was error for the trial court to allow the officer to discuss the statement.

Tennessee Rule of Evidence 801 defines hearsay as an out-of-court statement "offered in court to prove the truth of the matter asserted" in the statement. Rule of Evidence 802 generally excludes hearsay. The trial court's admission or exclusion of hearsay is subject to reversal only in the event of an abuse of discretion. *State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008); *see also State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997).

The contested testimony was elicited during the State's examination of the police sergeant. During direct examination, the sergeant testified that she arrived at the scene of the defendant's arrest after receiving a phone call. During cross-examination, the defense suggested that the sergeant was unaware that the defendant might have been involved in the

murder and robbery of the victim at the time the defendant and his passenger were taken into custody. The following line of questions was asked by the defense:

Q:     At the time of [the defendant's] . . . arrest you didn't know who was responsible for the killing of Jonathan Ardrey, is that right?

A:     That's right[.]

Q:     It might have been [the passenger], it might have been [the defendant], it might be somebody else, is that right?

A:     We had gotten a little information about who may have been responsible, but no, as far as knowing, we didn't know his complete involvement.

During re-direct examination, the State rehabilitated the sergeant's testimony as to her knowledge at the time of the defendant's arrest:

Q:     Now [counsel] asked you when you had [the passenger] and the defendant in the office, you didn't know who was responsible for the homicide, but you stated that you had some information and without revealing who gave you the information, what information did you get?

The defense objected, contending that the question sought hearsay. The State said that the defense opened the door by asking the witness about it. The trial court overruled the objection and the following exchange occurred:

A:     I'll say it was a confidential tip that [the defendant] had expressed to this person what happened and this person called the office.

Q:     That [the defendant] had expressed to that person that he had robbed and killed somebody?

A:     Yes. He and his girlfriend.

The State argues that the interest of fairness should allow the testimony based on the doctrine of curative admissibility as stated in *State v. Land*, 34 S.W.3d 516, 530-31 (Tenn. Crim. App. 2000). Because the doctrine of curative admissibility is not expressly adopted by Tennessee, we decline to consider the issue under that theory. Clearly, the statements of the unnamed person made during the telephone conversation with the sergeant constitute

hearsay and do not fall within a recognized hearsay exception. *See* Tenn. R. Evid. 801. However, the defendant is not entitled to relief on this issue pursuant to Tennessee Rule of Appellate Procedure 36(b). The rule states:

> A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

Here, in light of the proof presented at trial, i.e., the defendant's own statements that he hit the victim with the shotgun, and the limited use of the hearsay statement, the defendant has failed to show that the admission of the statement affected his conviction or prejudiced the result of his trial. To obtain relief, the defendant must demonstrate that the error in admitting the statement was so egregious as to deprive him of a fair trial. He has not met that burden and is, therefore, not entitled to relief on this issue.

Next, the defendant argues that the trial court erred in admitting a crime scene photograph that depicted finger marks running through a blood pool of blood on a night stand. The defendant argues that this picture was not necessary to portray the nature of the crime scene and only served to inflame the jury in order to secure a conviction. The admissibility of photographs lies within the sound discretion of the trial court whose ruling will not be overturned on appeal except upon a clear showing of an abuse of discretion. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *State v. Lacy*, 983 S.W.2d 686, 694 (Tenn. Crim. App. 1997). Nevertheless, the photograph must be relevant to an issue at trial, with its probative value outweighing any prejudicial effect that it may have upon the trier of fact. *State v. Braden*, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993). We, therefore, must first determine whether the photograph was relevant. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

Initially, we note that the defendant does not refer to any specific photograph, only one that depicted a pool of blood on a night stand with the victim's fingerprints in the blood. The trial court took the defendant's objection outside the presence of the jury and determined that, because it was a murder trial and the circumstances of the killing were horrific, the probative value of the evidence outweighed the danger of unfair prejudice. The defendant has not demonstrated on appeal that the trial court abused its discretion in determining that the photograph of the night stand was admissible. Our review of the photographs reveals a crime scene that was, as stated by the witnesses, covered in blood. This was a particularly brutal killing where the victim was robbed and beaten to death with a shotgun. He was so

severely beaten that one of the hammers of the shotgun broke off and lodged in the back of his skull. The defendant cannot show that the admission of this one photograph was unduly prejudicial. Each photograph in the record of the crime scene, particularly those of the area around the victim's body, shows a large amount of blood. The defendant is not entitled to relief on this issue.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE