IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY SESSION, 1994

FILED

April 2, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | |
| | ) | |
| APPELLEE | ) | NO. 03C01-9302-CR-00050 |
| | ) | |
| | ) | HAMILTON COUNTY |
| | ) | |
| V. | ) | HON. STEPHEN M. BEVIL, JUDGE |
| | ) | |
| | ) | (First Degree Murder; Attempted |
| | ) | Second Degree Murder) |
| ROBERT WILLIAMS | ) | |
| | ) | |
| APPELLANT | ) | |

FOR THE APPELLANT:                    FOR THE APPELLEE:

James G. Greenley                     Charles W. Burson
Attorney at Law                       Attorney General
(On appeal only)
P.O. Box 5255                         Kimbra R. Spann
Sevierville, TN 37862                 Assistant Attorney General
                                      450 James Robertson Parkway
John W. McClarty                      Nashville, TN 37403-0493
McClarty & Taylor
Attorneys at Law                      Gary D. Gerbitz
(At trial only)                       District Attorney General
822 McCallie Avenue
Chattanooga, TN 37403                 Rodney Strong
                                      Asst. Dist. Attorney General
Karla G. Gothard                      310 Courts Bldg.
Asst. Public Defender                 600 Market Street
(At trial only)                       Chattanooga, TN 37402
701 Cherry Street, Suite 300
Chattanooga, TN 37402


AFFIRMED AS MODIFIED


OPINION FILED: _____


JERRY SCOTT, PRESIDING JUDGE

## O P I N I O N

The appellant was convicted of first degree murder and attempted second-degree murder in violation of Tenn. Code Ann. § 39-13-202(a)(1) and § 39-12-101(a). Judgment was entered and following a sentencing hearing, the appellant was sentenced to death by electrocution for the first degree murder and to thirty (30) years imprisonment for the attempt to commit second-degree murder, to be served consecutively. On appeal, the following issues are presented for our review:

### I.

Whether the evidence was sufficient to show premeditation and deliberation in the killing of Janet Milligan, and therefore, to support a verdict of first degree murder?

### II.

Whether the court erred during the jury selection process by denying the appellant individual sequestered voir dire, or by violating the principles of Batson v. Kentucky or Witherspoon v. Illinois?

### III.

Whether the state's mere introduction of records of conviction of a "Robert Williams" sufficiently establishes the prior-conviction aggravating factor for this appellant?

### IV.

Whether the state's reference to the victim's death during the sentencing hearing was improper argument resulting in prejudice to the appellant?

### V.

Whether the jury instructions given at the sentencing hearing were constitutional?

### VI.

Whether the Tennessee death penalty statutory scheme is unconstitutional on its face or as applied?

### VII.

Whether the trial court erred in failing to charge the jury with special instructions relating to the appellant's intoxication as a mitigating factor?

**VIII.**

Whether the trial court erred by instructing the jury first of the indicted offense, first degree murder, and following it in descending order of severity with the lesser-included offenses?

**I.**

We first address the appellant's contention that the evidence was insufficient to support the verdict of first degree murder. The evidence of the events surrounding the crime came solely from the surviving victim, David Milligan, who was the husband of the murder victim, Janet Milligan. He testified that the appellant, who had previously lived with Ms. Milligan, came to their home on the night of the crime and told Mr. Milligan that he came by to pick up some of his belongings and would like to "holler" at Ms. Milligan.

Mr. Milligan said the appellant had a "nice attitude" and he agreeably let the appellant in and directed him to the bedroom where Ms. Milligan was watching television with her young daughter. When the appellant got to the bedroom, he reached in his coat pocket, pulled out a pistol and ordered Mr. Milligan into the bedroom. After Mr. Milligan told the appellant that he had no problem with him taking all of his belongings, the appellant shot him in the side of the face. Mr. Milligan testified that, after being shot, he raised up and saw the appellant pull back his wife's head and shoot her. The evidence showed that Ms. Milligan died from multiple gunshot wounds after being shot three times, in the head, the elbow and the wrist.

Mr. Milligan testified that his wife had recently purchased a pistol and kept it under her pillow, but that she had not pulled it out when the appellant entered the bedroom. Indeed, he said that no conversation occurred between the appellant and Ms. Milligan before the shootings began but that Ms. Milligan had begun to scream as soon as she first saw the appellant in her home.

The principles which govern this court's review of a conviction by a jury are well established. This court must review the record to determine if the evidence adduced at trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to determinations of guilt predicated upon direct evidence, circumstantial evidence, or a combination thereof. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a verdict against a criminal defendant removes the presumption of innocence and raises a presumption of guilt on appeal, State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), which the defendant/appellant has the burden of overcoming. State v. Brown, 551 S.W.2d 329, 330 (Tenn. 1977).

In examining the sufficiency of the evidence, this court does not reevaluate the weight or credibility of the witnesses' testimony as those are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Wright, 836 S.W.2d 130, 134 (Tenn. Crim. App. 1992). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). The relevant question on appeal is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have determined that the essential elements of the crime were established beyond a reasonable doubt. Tenn. R. App. P. 13(e);

4

Jackson v. Virginia, 443 U.S. 307, 314-324, 99 S.Ct. 2781, 2786-2792, 61 L.Ed.2d 560 (1979).

First degree murder is "[a]n intentional, premeditated, and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (1991). In State v. Brown, 836 S.W.2d 530, 540 (Tenn. 1992), the Supreme Court recently dealt with this crime holding that, "even if intent (or 'purpose to kill') and premeditation ('design') may be formed in an instant, deliberation requires some period of reflection, during which the mind is 'free from the influence of excitement, or passion.' " "In order to establish first-degree murder, the premeditated killing must also have also been done deliberately, that is, with coolness and reflection." Id. at 539. Here, the defendant came to Ms. Milligan's home armed with a pistol and entered the home, ostensibly in an amicable frame of mind. He shot Mr. Milligan and then Ms. Milligan not once but three times. Given the above stated facts and the narrow confines of this review, we find the evidence to be more than sufficient to prove the defendant guilty of first degree murder beyond a reasonable doubt.

## II.

The appellant raises several issues which relate to the selection of the jurors. Specifically, he insists that the trial judge erred by denying his request for individual sequestered voir dire, and that the jury selection process was violative of both Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Witherspoon v. Illinois, 391 U.S. 510,88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The ultimate goal of voir dire is to see that the jurors are competent, unbiased, and impartial, and the decision of how to conduct voir dire of prospective jurors rests within the sound discretion of the trial court. State v. Howell, 868 S.W.2d 238, 247 (Tenn. 1993)(citing State v. Harris, 839 S.W.2d 54, 65 (Tenn. 1992)). This goal was attained in this case and the trial judge did not abuse his discretion.

First, as to the trial court's denial of individual sequestered voir dire, our Supreme Court has consistently adhered to the position that death qualification in a capital case does not necessitate sequestration during voir dire. State v. Smith, 857 S.W.2d 1, 20 (Tenn. 1993); (citing State v. Johnson, 698 S.W.2d 63l, 633 (Tenn. l985) and State v. Porterfield, 746 S.W.2d 441, 447 (Tenn. 1988)); State v. Stephenson, 878 S.W.2d 530, 540 (Tenn. 1994) (citing Smith and Porterfield). Indeed, our Court has said that, "[i]ndividual voir dire is mandated only when there is a 'significant possibility' that a juror has been exposed to potentially prejudicial material." State v. Harris, 839 S.W.2d 54, 65 (Tenn. 1992) (quoting State v. Porterfield, supra). The defendant here argues that group voir dire focussed the jurors on the issue of punishment and predisposed them to the view that the death penalty is appropriate. He also contends that it hindered the ability of defense counsel to know who to exclude and thus how to intelligently exercise the peremptory challenges. These assertions are speculative and are not factually supported by anything in the record. The defendant has therefore failed to establish that group voir dire prejudiced him to the extent that the entire voir dire and the impartiality of the jury were invalidated. See State v. Keen, ___S.W.2d ___, No. 02S01-9112-CR-00064 Slip Op. at 28 (Tenn. 1994); State v. Stephenson, supra.

Next, the defendant asserts that the state violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in its exercise four of five peremptory challenges used to excuse black prospective jurors. As this Court has noted, a challenge to the unconstitutional exercise of a peremptory challenge must be made in a timely fashion. State v. Bogle, No. 86-258-III (Tenn. Crim. App. filed Aug. 7, 1987); State v. Peters, No. 230 (Tenn. Crim. App. filed Feb. 24, 1987). In this case, no objection was interposed until the appellant filed his motion for a new trial. By that time the trial judge could no longer take corrective action, which in this case would have been demanding a racially-neutral basis for the peremptory challenges. To hold otherwise would

6

permit defendants to withhold objections as a tactical matter in order to have grounds for reversal in the event of a guilty verdict, resulting in total chaos in our system of criminal justice. This court has recognized such a danger and held that timely objections must be made even when constitutional issues are at stake. State v. Simerly, 612 S.W.2d 196, 197 (Tenn. Crim. App 1980).

Even if the objections had been timely, it appears that no violation of Batson occurred. Two of the excused black jurors had criminal records, another had indicated that he might not be able to vote for the death penalty, and the fourth knew one of the then-potential witnesses for the sentencing phase of the trial. Those racially-neutral reasons for the prosecution's use of its peremptory challenges negate any constitutional problem.

The third issue with regard to the jury selection involves the defendant's claim that the jury selection process violated Witherspoon v. Illinois, supra. Specifically, he argues that the statements by two of the prospective jurors concerning the death penalty did not justify their excusal for cause. Both of the jurors indicated that they were strongly opposed to the death penalty and would consider imposing it under no circumstances. One of the jurors had talked to the state representative from her district about trying to eliminate the death penalty from Tennessee law. The other said she did not think she could live with herself if she voted for the death penalty. The Witherspoon standard was clarified in Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841(1985):

> That standard is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." We note that, in addition to dispensing with Witherspoon's reference to "automatic" decisionmaking, this standard likewise does not require that a juror's bias be proved with "unmistakable clarity."

The Court also recognized that the questions asked and answers given during the voir dire process do not always reveal a juror's bias with absolute certainty;

7

"however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." Wainwright, 469 U.S. at 425. Therefore, 'deference must be paid to the trial judge who sees and hears the juror." Id. In this case the trial judge believed that those two jurors were adamantly opposed to the death penalty and the record absolutely supports that conclusion. The constitutional standard for excusing jurors due to their views on the death penalty was met.

### III.

In the sentencing phase of the trial, the state introduced certified copies of the judgments of convictions of three prior violent felonies committed by "Robert Williams," including voluntary manslaughter, second degree murder, and felonious assault with bodily injury. There was no other evidence linking the appellant with the prior felonies other than the name, "Robert Williams." The appellant contends that the prosecution, by merely introducing those records, did not satisfy its burden of proof as to the aggravating circumstance that he had been previously convicted of one or more felonies other than the present charge whose statutory elements involved the use of violence to the person. Tenn. Code Ann. § 39-13-204(i)(2).

The trial judge denied the appellant's motion for judgment of acquittal regarding the death penalty. A trial judge may set aside a verdict and grant a judgment of acquittal pursuant to Rule 29 (c), Tenn. R. Crim. P., upon finding that the evidence is legally insufficient to establish the elements of the offense beyond a reasonable doubt. State v. Davis , 872 S.W.2d 950, 955 (Tenn. Crim. App. 1993); see also Jackson v. Virginia, supra.

The trial judge thoroughly and accurately instructed the jury that:

The State is required to adduce sufficient proof to establish the
identification of the person named in the judicial records as being
the same person as the defendant on trial beyond a reasonable
doubt. In short, the proof supplied by the records is nothing more

8

than circumstantial evidence, and if the jury is satisfied from the evidence regarding the identification question, then the jury may determine the defendant is one and the same person.

The identity of the defendant as the person named in the documents introduced into evidence must be established by the proof beyond a reasonable doubt. If you have a reasonable doubt as to whether the defendant has been identified as the person named in the documents, it will be your duty to fix the punishment at life imprisonment.

You may not assume the identity of the defendant as the person named in the documents, this must be proven to you beyond a reasonable doubt.

You may take into account the commonalty [sic] of the name contained in the documents, the lack of a middle name, and the lack of any other identifying factors.

The appellant never alleged that he did not commit the prior felonies, nor did he interpose an objection to the introduction of the documents reflecting the prior convictions. The presentence investigation report, the accuracy of which the appellant has not challenged, sets forth the prior convictions, but that report was not presented to the jury and there was simply insufficient evidence presented to the jury that the appellant was the same "Robert Williams" who was convicted of the other felonies.

Our Supreme Court looked at this issue in a recent case involving Tennessee's former habitual criminal statute which had at that time been superseded by the provisions of the Tennessee Criminal Sentencing Reform Act of 1989. The statute provided that "a judgment of conviction of any person . . . under the same name as that by which such person is charged with the commission or attempt at commission , of a felony under the terms of this chapter, shall be prima facie evidence that the identity of such person is the same." Tenn.Code Ann. § 39-1-804 (1982). The Court found that this statute was not unconstitutional per se, but passed constitutional muster so long as the jury was instructed that the prior conviction did not shift the burden to the defendant but merely created a permissive inference that the defendant is the same person. Lowe v. State, 805 S.W.2d 368, 372 (Tenn. 1991). Here, the jury

received very adequate instructions regarding how to weight the evidence and returned a sentencing verdict pursuant to the evidence. However, the evidence was not sufficient to show that the "Robert Williams" on trial in this case was the same "Robert Williams" convicted in the other cases. This issue has merit. The sentence of death is set aside and the judgment is modified to set the appellant's punishment at life imprisonment.

## IV.

Next, the appellant contends that his sentence should be reversed because of improper jury argument by the prosecutor during the closing argument at the sentencing hearing. Specifically, he refers to the following argument by the state: "Yes, she still had his T.V., is that a mitigating circumstance? Does that outweigh her death?" These words were followed by an objection from the appellant's counsel with the explanation that "[h]er death is not an aggravating circumstance." The trial judge sustained the objection. The appellant did not request a limiting instruction and none was given. However, the judge clearly instructed the jury not to consider any factors or circumstances to be aggravating circumstances other than the appellant's prior felonies .

The sentencing statute provides that "[n]o death penalty . . . shall be imposed but upon a unanimous finding that the state has proven beyond a reasonable doubt the existence of one(1) or more of the statutory aggravating circumstances" and limits consideration to the twelve aggravating circumstances set forth in the statute. Tenn. Code Ann. § 39-13-204(i) (Supp. 1995). Additionally, the statute provides that "[i]n the sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the punishment and may include, but not be limited to, the nature and circumstances of the crime;" the defendant's character, background history, and physical condition;" and evidence establishing or rebutting the existence of the

enumerated aggravating circumstances and any mitigating factors. Tenn. Code Ann. § 39-13-204 (c) (Supp. 1995). In a recent case where the jury revealed that they had considered the death of the victim and the surrounding circumstances in imposing a death sentence, our Supreme Court stated that "[o]nce a capital sentencing jury finds that a defendant falls within the legislatively-defined category of persons eligible for the death penalty, the jury is free to consider a myriad of factors to determine whether death is the punishment appropriate to the offense and the individual defendant." State v. Nichols, 877 S.W.2d 722, 731 (Tenn. 1994). (citing cases from the United States Supreme Court).

Assuming arguendo that the remark was improper in its suggestion that the jury should weigh the victim's death against the mitigating factors, it was harmless error. "A court reviewing the propriety of argument in a capital sentencing proceeding must determine whether the prosecutor's comments affected the sentencing decision." State v. Irick, 762 S.W.2d 121, 131 (Tenn. 1988). The standard set forth by this Court in reviewing such an allegation requires the consideration of five factors in determining whether any improper conduct was prejudicial: (1) the conduct complained of viewed in the context and in light of the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; (5) the relative strength or weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App 1976). Applying those factors to this remark, we find that the verdict could not have been affected to the prejudice of the appellant by the isolated remark. The prosecutor's remark was moderate at most and the trial judge gave the jury clear and accurate instructions as to the law. This issue is without merit. Furthermore, in view of our action on the previous issue, this issue is of no importance.

11

## V.

The appellant has raised several constitutional challenges to the jury instructions given at the end of the sentencing hearing. He first submits that it is constitutional error to instruct juries that they must agree unanimously in order to impose a life sentence and then to prohibit juries from being told the effect of a non-unanimous verdict. The argument that the jury should be told the effect of failing to agree has been addressed and repeatedly rejected by the Supreme Court. See State v. Brimmer, 876 S.W.2d 75, 87 (Tenn. 1994); State v. Cazes, 875 S.W.2d 253, 268 (Tenn. 1994); State v. Keen, supra, at 36; State v. Smith, 857 SW.2d 1, 22-23 (Tenn. 1993); State v. Barber, 753 S.W.2d 65, 670-71 (Tenn. 1988).

The appellant argues that requiring the jury to agree unanimously to a life verdict violated the holdings in McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed. 369 (1990), and Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Our Supreme Court has repeatedly rejected this argument. See State v. Brimmer, 876 S.W.2d 75, 87 (Tenn. 1994); State v. Thompson, 768 S.W.2d 239, 252 (Tenn. 1989); State v. King, 718 S.W.2d 241, 249 (Tenn. 1986). Specifically, in Brimmer, the Court noted that McKoy and Mills stand for the principle that any requirement that the jury must unanimously find a mitigating circumstance before it can be considered violates the Eighth Amendment. However, the requirement of a unanimous verdict does not violate those principles. Brimmer, 876 S.W.2d at 87.

Additionally, the appellant argues that the Tennessee Pattern Jury Instructions create a reasonable likelihood that jurors are led to believe that they must unanimously agree on the existence of any mitigating factors. The Supreme Court has also repeatedly rejected this argument. See State v. Brimmer, supra; State v. Cazes, supra. Moreover, the trial judge specifically instructed the jury in this case that "[t]here is no requirement of jury unanimity as

12

to any particular mitigating circumstance, or that you agree on the same mitigating circumstance." It is a well-established rule in Tennessee that a jury is presumed to have followed the instructions of the trial court. State v. Lawson, 695 S.W.2d 202, 204 (Tenn. 1985).

## VI.

The appellant's next challenge relates to the constitutionality of Tennessee's death penalty statute. Specifically, he contends that Tenn. Code Ann. § 39-13-204 (i)(2) (Supp. 1995), the aggravating factor for previous violent felony convictions, does not sufficiently narrow the class of persons eligible for the death penalty. He argues that this aggravating factor presumes that persons convicted of felonies with violent elements are violent, and thus unfairly makes aiders and abettors eligible for capital punishment.

The Tennessee Supreme Court recently addressed this concern and found that the clear language of the statute did not require that this aggravating factor be limited to convictions where the defendant directly used threats or violence against another person. State v. Smith, 857 S.W.2d 1, 10 (Tenn. 1993). "We are of the opinion that the degree of a defendant's involvement in an aggravated felony goes to the weight the jury is to give aggravating circumstances when determining whether they outweigh mitigating circumstances." Id. Moreover, the United States Supreme Court has upheld a similar provision in the Georgia death penalty statute. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235 (1983). There a defendant's prior record of conviction for a capital felony was held to be a valid aggravating factor and to effectively narrow the eligible class. Id. Additionally, we point out that our Supreme Court has consistently upheld, in general, the constitutionality of Tennessee's death penalty statute under both state and federal constitutions. State v. Harris, 839 S.W.2d 54, 76 (Tenn. 1992); State v. Nichols, 877 S.W.2d at 737.

13

The appellant also attacks Tennessee's death penalty statute as unconstitutional on the ground that it is imposed in an arbitrary and capricious manner. Initially, he asserts that unlimited discretion is vested in the prosecutor as to whether or not to seek the death penalty. In State v. Cazes, supra, our Supreme Court directly addressed the issue of prosecutorial discretion, finding that no constitutional problems result from the mere opportunity for discretion. The court cited and applied the United States Supreme Court case of Gregg v. Georgia, 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.E.2d 859 (1976), "in which the Court held that opportunities for discretionary action occurring during the processing of a murder case, including the authority of the state prosecutor to select those persons for whom he wishes to seek capital punishment do not render the death penalty unconstitutional on the theory that the opportunities for discretionary action render imposition of the death penalty arbitrary or freakish."

He next points to the disproportionate infliction of capital punishment on the basis of geography, economic status and gender. The State responds that these allegations are based on statistics and studies which were not placed in the record and that this court may not take judicial notice of those documents. Appellate courts may only review what is in the record and not what might have been or should have been included. Dearborne v. State, 575 S.W.2d 259, 264 (Tenn. 1978). In relevant part, Tenn. R. App. P. 13(c) limits consideration by this Court to "those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed. . . ." Aside from the impropriety of appellate consideration of materials not introduced at trial, the Tennessee Supreme Court has summarily dismissed claims regarding economic, gender and geographic discrimination in the imposition of the death penalty. Cazes, 875 S.W.2d at 268; accord Brimmer, 876 S.W.2d at 87, State v. Thompson, No. 02C01-9308-CR-00195, Slip Op. at 17, 18 (Tenn. Crim. App. filed March 9, 1994).

14

## VII.

The Defendant's next argument is that the trial court erred by failing to instruct the jury regarding mitigating circumstances raised by the evidence.  He refers specifically to the mitigating factor set forth at Tenn. Code Ann. § 39-13-204 (j)(8)(Supp.1995), i.e., that "[t]he capacity of the defendant to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected the defendant's judgment."  The trial judge declined to instruct the jury on this factor because he did not find that there was sufficient proof to show its applicability.  He stated that he "did not see any proof of that whatsoever before this jury."  Indeed, the only pertinent testimony that could possibly raise the issue of the applicability of that factor was the testimony of the victim, Mr. Milligan, that when the appellant came to the door, he had red eyes and looked like he had been drinking, and testimony from a police detective that three hours after the crime, that when he saw the appellant, he could smell alcohol but the appellant "did not seem like he was overly intoxicated or so forth."

In interpreting the language of Tenn. Code Ann. § 39-13-204 (e) (1995), the Supreme Court had stated that it is the trial judge's duty to determine which of the mitigating circumstances have been raised by the evidence and thus should be submitted to the jury for determination.  State v. Buck, 670 S.W.2d 600, 608 (Tenn. 1984).  And, the "mitigating circumstances which [are] not raised by the evidence should not  [be] mentioned in the charge." Accord  State v. Cazes, supra, 875 S.W. at 267.

In State v. Brimmer, supra, 876 S.W.2d at 82, our Supreme Court upheld the trial court's decision not to instruct the jury as to this same statutory mitigator, § 39-13-204(j)(8), or § 39-13-204(j)(2), that the murder was committed while the

15

defendant was under the influence of extreme mental or emotional disturbance. There, even though the defendant's evidence consisted of the testimony of a psychologist that the defendant was angry, impulsive, and prone to outbursts as a result of a personality disorder, the trial judge found this was a common disorder and absent proof of causation, no special jury instruction was warranted.

In this case, the limited evidence that the appellant may have consumed some alcohol is not evidence that he was intoxicated to such a degree that his capacity to appreciate the wrongfulness of his conduct or conform his conduct to the law was impaired. Such mitigating facts and circumstances were simply not raised by the evidence, and, therefore, the trial judge did not err in charging the jury as to the mitigating factors.

## VII.

In the appellant's final issue, he contends that the trial court erred in charging the jury first with the indicted offense, obviously the most severe, and proceeding in descending order of severity ending with the least severe lesser-included offense. He argues that the sequence allowed the jury to return a verdict of first degree murder even if they made findings that should have resulted in a lesser degree of murder. This Court recently rejected this argument in State v. Rutherford, 876 S.W.2d 118, 119 (Tenn. Crim. App. 1993); where it was held that "(t)he sequential jury instruction did not preclude the jury from considering the lesser charges." This Court also pointed out that the "Tennessee Pattern Jury Instruction 41.01 suggests the type of sequential jury instruction that was given by the judge." Id. This issue is without merit.

## CONCLUSION

We have carefully considered the defendant's contentions as to the alleged errors occurring during the guilt and sentencing phases and conclude

16

that the defendant's conviction of first-degree murder must be affirmed.

However, the sentence of death is set aside and the punishment is fixed at life

imprisonment.

The judgment is affirmed, except as modified herein.

_____
JERRY SCOTT, PRESIDING JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
JOHN P. COLTON, SPECIAL JUDGE