# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### FEBRUARY 1999 SESSION



FILED

April 1, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| HECK VAN TRAN, | ) | NO. 02C01-9803-CR-00078 |
| Appellant, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. WILLIAM H. WILLIAMS, |
| STATE OF TENNESSEE, | ) | JUDGE BY DESIGNATION |
| | ) | |
| Appellee. | ) | (Post-Conviction: Death Penalty) |

**FOR THE APPELLANT:**

**BROCK MEHLER**
751 Roycroft Place
Nashville, TN 37203

**WILLIAM D. MASSEY**
3074 East Street
Memphis, TN 38128

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MICHAEL E. MOORE**
Solicitor General

**JENNIFER L. SMITH (On Appeal)**
**GLENN R. PRUDE (At Hearing)**
Assistant Attorneys General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**JOHN W. CAMPBELL**
Assistant District Attorney General
Criminal Justice Complex
Suite 301
201 Poplar Avenue
Memphis, TN 38103-1947

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**O P I N I O N**

Petitioner, Heck Van Tran, appeals from the dismissal of his petition for post-conviction relief by the Criminal Court of Shelby County. He was previously convicted on three counts of felony murder and sentenced to death on each count. Although all three convictions were affirmed on direct appeal, only one death sentence was affirmed. Petitioner now contends the trial court erred in dismissing his petition for post-conviction relief and presents the following issues for review:

1. whether the original trial court erred in failing to inquire into petitioner's competency to stand trial;

2. whether the original trial court erred in defining "reasonable doubt" in jury instructions during both the guilt and sentencing phases of the trial;

3. whether petitioner's death sentence is disproportionate punishment in light of his present mental condition;

4. whether the post-conviction court erred in refusing funding for expert services for an investigation of the jury's composition;

5. whether the post-conviction court erred in denying petitioner's request for inspection of the prosecution file to seek exculpatory evidence;

6. whether petitioner's execution is prohibited because he is mentally retarded; and

7. whether petitioner was deprived of effective assistance of counsel at his original trial.

After a careful review of the record, we find no reversible error and **AFFIRM** the judgment of the trial court.

## PROCEDURAL HISTORY

In June 1989, a Shelby County jury found petitioner guilty of three counts of felony murder and sentenced him to death on all three counts. The three convictions were affirmed on appeal; however, only one death sentence was

2

affirmed.  State v. Van Tran, 864 S.W.2d 465 (Tenn. 1993).  The other two death sentences were set aside and remanded for resentencing.  *Id.* at 490.  The United States Supreme Court denied the petition for *writ of certiorari.*  Van Tran v. Tennessee, 511 U.S. 1046, 114 S.Ct. 1577, 128 L.Ed.2d 220 (1994).  Upon remand of the two successfully challenged sentences, petitioner received two concurrent life sentences.

Petitioner filed his petition for post-conviction relief on March 7, 1995.  An evidentiary hearing was conducted in October 1997.  The petition was dismissed by order entered February 13, 1998, and petitioner timely appealed to this Court.  Oral arguments were heard February 10, 1999.[1]


## FACTS


We incorporate the following material facts as set forth by the Supreme Court of Tennessee on direct appeal:

On the afternoon of October 20, 1987, Arthur Lee, Amy Lee, and Kai Yin Chuey were found dead in the Jade East Restaurant in Memphis.  The restaurant had not yet opened for business that day, and the victims had apparently been inside making preparations for the evening.  Jewelry with a wholesale value of $25,000 had been taken from the restaurant.  The State's critical proof included:  a statement taken from the Defendant in which he admitted his involvement in the crimes; Defendant's fingerprint on one of the jewelry cases taken during the robbery; and the eyewitness identification of the Defendant by a survivor of the robbery.

. . .

The Defendant, Heck Van Tran, was born on November 8, 1966.  His mother was Vietnamese; and his father, an American serviceman, died in Vietnam in 1968.  The Defendant started school when he was six years old but stopped when Saigon fell.  In 1983 a Catholic relief agency resettled the Defendant and his mother in Memphis.  The Defendant briefly attended school before dropping out in 1984.

After his arrest by the Houston, Texas, police, Defendant gave a statement in which he acknowledged his role in the robbery and

---

[1]Oral arguments were heard in Dyersburg, Tennessee.  Students of the Lake County, Dyer County and Dyersburg school systems attended at the invitation of this Court in an effort to educate them about our judicial system.

3

murders. He stated that he had worked briefly at the Jade East Restaurant a month or two before the crimes and that Mr. Lee had fired him because "he didn't like me" and "said I cooked too many egg rolls." The Defendant implicated Hung Van Chung, Kong Chung Bounnam and Duc Phuoc Doan in the robbery. He stated that the four men entered the back door of the restaurant and he talked to Arthur Lee "for about ten minutes before there was any shooting." The Defendant had a .22 revolver, Bounnam a .44, Chung a .22 and Doan a .25.

The Defendant described what happened after the group pulled out their guns:

> Mr. Lee grabbed Nam's [Bounnam's] hand with the gun and elbowed him in the chest. Nam fell back and hit the old lady. The old lady fell on me and when she hit me it caused the gun to go off. I don't know what I hit that time. Mr. Lee then kicked Hung [Chung]. I heard Hung Chung shoot one or two times and then Mr. Lee tried to grab the gun and Hung Chung shoot him. While Mr. Lee was trying to get Hung [Chung's] gun, I told him not to or I would have to hurt him. He turned and tried to get my gun and I shot him. He fell and was moving around and I shot him in the face somewhere. Then I walked thr[ough] the door where they kept the money and gold. I looked up and saw the old lady roll over. I thought she had something in her hand. I shot her in the back of the head.

While the Defendant was in the office collecting the jewelry, he heard more shots. He stated that he did not know "who was shooting or what" or who had shot "the young girl," Amy Lee. Upon leaving the office, the Defendant saw Bounnam holding Ging Sam Lee. The Defendant told Bounnam not to hurt her. Bounnam hit Mrs. Lee on the back of the head, and all the assailants left.

Outside the restaurant, the Defendant discovered that Bounnam had been shot in the left leg near the groin. Bounnam claimed the Defendant had shot him. The group fled in Bounnam's Camaro to an acquaintance's apartment. From there, the Defendant, Bounnam and Chung drove Chung's car to Washington, D.C. Bounnam's Camaro was left in Memphis. Doan remained in Tennessee.

From Washington, the trio drove to Houston, Texas. Once in Houston, the Defendant went to the Saigon Pool Hall and talked with a Vietnamese man about selling some gold. The man took the gold and returned in about ten minutes with $4,000.00. The Defendant paid the man $200 and divided the rest three ways. Later, Bounnam flew to North Carolina and Chung went to Dallas with a friend.

On April 28, 1988, almost six months after the robbery, the Defendant was arrested in Houston. . . .

State v. Van Tran, 864 S.W.2d at 468-69.

4

## STANDARD OF REVIEW

The petition for post-conviction relief was filed on March 7, 1995; therefore, the prior Post-Conviction Procedure Act, Tenn. Code Ann. § 40-30-101 *et seq.*, applies and not the Post-Conviction Procedure Act of 1995, Tenn. Code Ann. §40-30-201 *et seq.* The new Act only applies to petitions filed after May 10, 1995. Tenn. Code Ann. § 40-30-201 Compiler's Notes.

Petitioner has the burden of proving his claims by a preponderance of the evidence under the prior Act. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Findings of fact made by the trial court are conclusive on appeal unless the evidence preponderates against the judgment. Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). Accordingly, we are bound to affirm the judgment unless the evidence in the record preponderates against the findings of the trial court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The burden of establishing that the evidence preponderates against the trial court's findings is on the petitioner. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997).

After the evidentiary hearing, Honorable William H. Williams entered a comprehensive 30-page Memorandum of Findings of Fact and Conclusions of Law. This excellent, extensive memorandum addressed each ground raised by petitioner as required by Tenn. Code Ann. § 40-30-118(b).

## TRIAL COURT'S FAILURE TO INQUIRE INTO COMPETENCY

Petitioner contends that the original trial court erred in failing to inquire into his competency and trying him when he was not competent, thus violating his due process rights. Petitioner failed to raise this issue on direct appeal; therefore, it is "waived" and is not an appropriate ground for post-conviction relief. *See* Tenn. Code Ann. § 40-30-112(b)(1); House v. State, 911 S.W.2d 705, 714 (Tenn. 1995). Furthermore, for reasons hereinafter stated, petitioner has not made an appropriate

5

showing that the trial court had any reasonable basis to order a mental evaluation and/or declare petitioner incompetent *sua sponte*.[2]

This issue is without merit.

## REASONABLE DOUBT JURY INSTRUCTION

Petitioner contends the trial court's definition of "reasonable doubt" was constitutionally deficient in requiring proof to a "moral certainty" and excluding "possible doubt" from the definition. This issue is "waived" since it was not raised on direct appeal. Tenn. Code Ann. § 40-30-112(b)(1). Furthermore, the trial court's "reasonable doubt" jury instruction has been held constitutional. *See* Carter v. State, 958 S.W.2d 620, 626 (Tenn. 1997).

This issue is without merit.

## DISPROPORTIONATE SENTENCE

Petitioner contends his death sentence is disproportionate and excessive punishment in light of his present mental condition. Specifically, he contends he is presently insane.

The Supreme Court of Tennessee conducted a proportionality analysis in the direct appeal and concluded that the death penalty was "neither excessive nor disproportionate." State v. Van Tran, 864 S.W.2d at 482. Therefore, the issue of proportionality has been "previously determined" and is not a proper ground for post-conviction relief. Tenn. Code Ann. § 40-30-112(a).

The Eighth Amendment to the United States Constitution prohibits the state from inflicting the death penalty upon a prisoner who is insane. Ford v. Wainwright,

---

[2]The failure of trial counsel to raise the issue of petitioner's competence is discussed under petitioner's ineffective assistance of counsel claim.

6

477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); *see also* <u>Jordan v. State</u>, 124 Tenn. 81, 87, 135 S.W. 327, 329 (1911)(discussing common law rule that one cannot be tried, sentenced or punished while insane). However, this is not a proportionality issue.

In spite of the constitutional prohibition against the execution of an insane person, Tennessee has no specific statutory procedure by which to address this issue post-trial. Many states have statutes explicitly requiring the suspension of the execution of a prisoner who meets the legal test for incompetence. *See* <u>Ford v. Wainwright</u>, 477 U.S. at 408, n.2. The Tennessee legislature should give consideration to this issue.

Post-conviction relief is a statutory creation. Tenn. Code Ann. § 40-30-101 *et seq.* (now § 40-30-201 *et seq.*). Neither these statutes nor any other statutes make provisions to address such an issue. As an intermediate appellate court, we are reluctant to create and vest jurisdiction in the trial court and establish a procedural basis to address this issue.

Petitioner is unquestionably entitled to be heard in some forum on this issue. In the event he is not accorded a state hearing, he can certainly seek federal relief. <u>Ford v. Wainwright</u>, 477 U.S. at 410.

Accordingly, we leave this matter to the determination of the Tennessee legislature and/or the Supreme Court of Tennessee.

## EXPERT SERVICES

Petitioner contends the post-conviction court erred in failing to fund his request for expert services to investigate the jury composition at his original trial. Specifically, he contends the jury selection procedures utilized in Shelby County violated the "fair cross-section" requirement of the Sixth Amendment to the United States Constitution. *See* <u>Duren v. Missouri</u>, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). He contends expert assistance would establish that college students

7

and certain professionals constituted a "distinctive group" and were unconstitutionally excluded by statutory exemptions.

The post-conviction court correctly noted the Tennessee Supreme Court's conclusion on direct appeal that petitioner failed to establish a *prima facie* violation based upon statutory exemptions for college students and certain professionals. The post-conviction court concluded this was a question of law which did not require statistical analysis.

In order to receive state funding for expert services in a post-conviction proceeding, a petitioner must demonstrate by specific factual proof that the services of an expert are necessary, and the petitioner is unable to establish that ground for post-conviction relief by other available evidence. Owens v. State, 908 S.W.2d 923, 928 (Tenn. 1995). The determination of the need for expert services is entrusted to the sound discretion of the trial court. State v. Cazes, 875 S.W.2d 253, 261 (Tenn. 1994).

The post-conviction court correctly concluded that this was an issue of law decided in the direct appeal. Thus, expert services would not be of assistance to the petitioner. The trial court did not abuse its discretion in refusing state funds for such expert services.

This issue is without merit.

## INSPECTION OF PROSECUTION FILE

Petitioner contends the post-conviction court erred in refusing his request to inspect the prosecution file under the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503. The state contends Tenn. Code Ann. § 10-7-503 is inapplicable since the state had a pending prosecution against one of petitioner's co-defendants, Kong Chung Bounnam.

Records relevant to a pending criminal action need not be disclosed under the Tennessee Public Records Act. Appman v. Worthington, 746 S.W.2d 165, 166

8

(Tenn. 1987), <u>Knoxville News-Sentinel v. Huskey</u>, 982 S.W.2d 359, 361 (Tenn. Crim. App. 1998). Since criminal action was pending against petitioner's co-defendant, petitioner was not entitled to the prosecution file under the Tennessee Public Records Act.[3]

Petitioner contends that since he has been unable to inspect the prosecution file, his claim of the prosecution withholding exculpatory evidence should not be categorically rejected. *See* <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As the post-conviction court correctly noted, petitioner has made no showing that exculpatory evidence has been withheld. A trial court does not abuse its discretion in refusing to examine the state's entire file to seek exculpatory evidence, absent more specific information. <u>State v. Caughron</u>, 855 S.W.2d 526, 541 (Tenn. 1993). Furthermore, there was no request that any files or documents be placed under seal for appellate review. Thus, we are precluded from considering the issue. *See* <u>State v. Gibson</u>, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997); <u>State v. Roberts</u>, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

This issue is without merit.

## MENTAL RETARDATION

Petitioner contends that he is "mentally retarded," such that his execution is prohibited by Tenn. Code Ann. § 39-13-203. The state contends Tenn. Code Ann. § 39-13-203 is inapplicable since it was not in effect on the date of the homicide; and that, in any event, petitioner has failed to establish mental retardation.

Tenn. Code Ann. § 39-13-203(b) provides that "no defendant with mental retardation at the time of committing first degree murder shall be sentenced to death." The statute also provides:

---

[3]Although the case of co-defendant Bounnam was pending at the time of the post-conviction hearing, petitioner alleges in his reply brief that the case has now concluded. Even if true, this does not affect the correctness of the post-conviction court's ruling. Petitioner is not precluded from seeking future relief if it is appropriate under the statute.

(a) As used in this section, "mental retardation" means:

(1) Significantly subaverage general intellectual functioning as evidenced by a functional intelligence quotient (I.Q.) of seventy (70) or below;

(2) Deficits in adaptive behavior; and

(3) The mental retardation must have been manifested during the developmental period, or by eighteen (18) years of age.

Tenn. Code Ann. § 39-13-203 (effective July 1, 1990). *See* 1990 Public Acts, Chapter 1038, § 6. The homicide was committed in October 1987.

At the post-conviction hearing, petitioner presented the testimony of Dr. Andrew Adler, a psychologist who administered psychological tests to the petitioner. Dr. Adler testified that petitioner's I.Q. was 67. However, the post-conviction court found Dr. Adler misread the manual relating to I.Q. calculation. Dr. Lynn Zager, a psychologist who testified for the state, related that the proper calculation was 72, not 67.

As stated, the post-conviction court found Dr. Adler's calculation of 67 to be erroneous and Dr. Zager's calculation of 72 to be correct. The evidence does not preponderate against this finding. The post-conviction court's findings are conclusive on appeal unless the evidence preponderates otherwise. Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990); Adkins v. State, 911 S.W.2d 334, 341 (Tenn. Crim. App. 1995). Therefore, we need not reach the issue as to whether Tenn. Code Ann. § 39-13-203 is applicable to those who commit first degree murder prior to its effective date.

This issue is without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends he was deprived of effective assistance of counsel at his trial. Specifically, he contends trial counsel were ineffective in the following respects:

10

| | | |
|---|---|---|
| (1) | failing to raise the issue of petitioner's competence to stand trial; | |
| (2) | failing to seek suppression of petitioner's confession based upon the denial of right to counsel and petitioner's inadequate language comprehension; | |
| (3) | failing to request support services; | |
| (4) | failing to adequately *voir dire* the jury; | |
| (5) | failing to investigate and present mitigating evidence; | |
| (6) | failing to properly address the issue of disproportionality of petitioner's death penalty on appeal; | |
| (7) | failing to object to various errors in the trial court; and | |
| (8) | failing to raise numerous other issues on appeal. | |

Further, petitioner argues the cumulative effect of these various deficiencies rendered his trial fundamentally unfair.


## A. Appropriate Standards for Effective Assistance

This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner has the burden to prove that the attorney's performance was deficient, and the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d at 899.

The test in Tennessee to determine whether counsel provided effective assistance is whether his performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065; Alley v. State, 958 S.W.2d 138, 149 (Tenn. Crim.

App. 1997); State v. Williams, 929 S.W.2d 385, 389 (Tenn. Crim. App. 1996). Thus, in order to prove a deficiency, a petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness based upon prevailing professional norms. Strickland v. Washington, 466 U.S. at 688, 104 S.Ct. at 2065; Henley v. State, 960 S.W.2d at 579; Goad v. State, 938 S.W.2d at 369.

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065. The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if those choices are informed ones and based upon adequate preparation. Goad v. State, 938 S.W.2d at 369; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Alley v. State, 958 S.W.2d at 149; Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).


**B.  Testimony at Post-Conviction Hearing**

The following testimony was elicited at the post-conviction hearing. Arthur Quinn and Manuel Scarmoutsos were appointed by the trial court to represent petitioner. Both were experienced criminal defense attorneys. Quinn had prior trial experience in a case where the state sought the death penalty, the defendant received a life sentence, and the Supreme Court of Tennessee reversed and found defendant not guilty by reason of insanity. See State v. Clayton, 656 S.W.2d 344 (Tenn. 1983). Scarmoutsos also had capital case experience under a previous death penalty statute.

Scarmoutsos filed a motion to suppress petitioner's confession. He did extensive investigation in Texas where the confession was given, and argued

12

petitioner did not intelligently waive his <u>Miranda</u> rights due to his limited

comprehension of the English language. This argument was rejected at trial and on appeal. *See* <u>State v. Van Tran</u>, 864 S.W.2d at 471-73.

Because of the devastating proof against petitioner, including fingerprint evidence, eyewitness testimony and the confession, defense counsel endeavored to negotiate a guilty plea. Although petitioner initially agreed to testify for the state during the trial of a co-defendant, petitioner changed his mind on the day of trial. Thereafter, petitioner rejected an offer of three consecutive life sentences.

Early in the attorney-client relationship, counsel had difficulty communicating with petitioner due to the language barrier. However, once an interpreter was secured, petitioner was able to understand. Based on their extensive dealings with petitioner, neither counsel felt competency was an issue.

Prior to trial, counsel retained the services of Dr. J. L. Khanna, a clinical psychologist. Based upon an examination, Dr. Khanna found petitioner to be below the average intelligence level, depressed with suicidal ideations, and under a great deal of stress. Counsel did not believe the findings of depression and stress to be unusual, especially for a person facing a capital murder trial. There was no indication from Dr. Khanna that petitioner was incompetent.

Dr. William D. Kenner, a forensic psychiatrist, testified on behalf of the petitioner at the post-conviction hearing. Dr. Kenner was appointed by the Probate Court in Davidson County in 1992 to determine whether the petitioner was competent to make decisions about his medical care. He determined that petitioner was not. Dr. Kenner was also retained by counsel in this post-conviction case and performed an evaluation in April 1997. At the time of the post-conviction hearing, Dr. Kenner believed the petitioner was suffering from chronic, severe paranoid schizophrenia.

Dr. Kenner testified that the onset of this illness is preceded by a prodromal phase that slowly develops over a number of months, sometimes years. Dr. Kenner, having read Dr. Khanna's report of April 1989, stated there was evidence

of this prodromal phase in the petitioner during his trial in June 1989. Dr. Kenner

also testified that the petitioner showed more progressive signs of this prodromal

phase during his initial processing by the Department of Correction in September

1989.

When asked whether he believed the petitioner was competent to stand trial,

Dr. Kenner testified:

> I think there are some indicators that would raise that question. And the indicators are that the way he handled himself is suicidal ideation, that he is having periods of confusion that he attributes to a headache. . . . So that those I think raise significant questions.
>
> The other issue that I think makes it very difficult in this case is that of language and culture. That it -- these issues are much easier to pick up, to understand, in someone from the same culture who is trained to examine someone and look at it. It becomes much more difficult when you're looking at someone from a different culture with a different mother [tongue].

Dr. Kenner further testified that in his mind these indicators would have raised a

need for further inquiry into the petitioner's mental state.

Dr. Murray Smith, a specialist in addictive medicine, evaluated the petitioner

for purposes of the post-conviction hearing. Dr. Smith determined that at the time

of the offense the petitioner was chemically dependent on drugs and alcohol dating

back to when he was eleven or twelve years old. Dr. Smith also concluded that the

petitioner had a sleep disorder and reactive hyperthyroidism and was in a

"hypervigilant, hyperactive state" at the time of the offense.

Dr. Andrew Adler, a counseling psychologist, was qualified as an expert in

measuring language intelligence and comprehension, and mental retardation.

Based upon his psychological evaluation of the petitioner in February 1997, Dr.

Adler concluded that the petitioner suffered from paranoid schizophrenia, post-

traumatic stress disorder, and mild mental retardation. He calculated petitioner's

I.Q. at 67 but was cross-examined as to the accuracy of this calculation.

According to Dr. Adler, the petitioner's vocabulary and language skills at the

time of the evaluation were comparable to a first or second grader's. Dr. Adler

further testified that he did not think the petitioner could have understood sufficiently

14

to knowingly and voluntarily waive his <u>Miranda</u> rights. According to Dr. Adler,

people from Southeast Asia stereotypically answer in the affirmative because they are taught to respect authority and not to offend others.

The state's witness, Dr. Lynn Zager, Clinical Director of Midtown Mental Health Center in Memphis, testified as an expert in psychology. Given the number scores Dr. Adler obtained from the petitioner's I.Q. test, Dr. Zager testified that the petitioner's I.Q. was 72, not 67. It appears from Dr. Zager's testimony that Dr. Adler simply miscalculated the result based upon petitioner's number scores.

### C. Competency

Petitioner contends trial counsel were ineffective in failing to raise the issue of petitioner's competence to stand trial. The state contends petitioner was competent and there was no reason for trial counsel to raise this issue.

A summary of pertinent findings and conclusions by the post-conviction judge as set forth in his memorandum is as follows:

(1)  petitioner had experienced trial counsel familiar with the issue of incompetency;

(2)  petitioner was able to confer with his counsel in a "reasonably intelligent manner;"

(3)  Dr. Khanna, an experienced clinical psychologist who evaluated petitioner prior to trial, did not indicate that petitioner was incompetent;

(4)  neither petitioner's mother, his sponsor from Catholic Charities, his friends nor any other person raised any questions concerning the petitioner's mental status at the time of trial;

(5)  trial counsel "had no reasonable basis to inquire into the mental capacity of the Petitioner at that time to stand trial;"

(6)  Dr. Kenner's testimony indicates petitioner would have been in the prodromal stages of schizophrenia at the time of trial;

(7)  Dr. Kenner testified only that there were "possible indicators" raising the issue of competency;

(8)  no expert testimony indicates that petitioner was incompetent at the time of trial;

15

(9) "[t]he record does not show a scintilla of substantive proof that Petitioner was incompetent to stand trial;"

(10) petitioner was competent to stand trial;

(11) petitioner was not insane at the time of the commission of the murders; and

(12) petitioner's I.Q. is 72, not 67.

Based upon these findings, the post-conviction court concluded that neither prong of Strickland had been met. Specifically, the court found that trial counsel's performance was not deficient. Furthermore, the post-conviction court found petitioner was not prejudiced by trial counsel's performance since petitioner was, in fact, competent to stand trial.

After a careful review of the record, we conclude the evidence does not preponderate against these findings by the post-conviction court. Petitioner has, therefore, failed to establish that trial counsel's performance was in any way deficient, or that he was prejudiced by their performance. See Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; Goad v. State, 938 S.W.2d at 369.

This issue is without merit.

## D. Suppression of Confession

Petitioner contends trial counsel were deficient in their handling of the motion to suppress his confession. Specifically, he contends they were deficient in failing to offer expert proof concerning his lack of language comprehension and in failing to challenge the confession based upon the Sixth Amendment right to counsel.

The post-conviction court found no deficiencies by trial counsel. Furthermore, the court found no prejudice since a Sixth Amendment argument would have been unsuccessful.

Counsel pursued a motion to suppress the confession at the trial level and on appeal. On appeal, the Tennessee Supreme Court specifically noted petitioner's language difficulties, yet found the petitioner to have voluntarily, knowingly and intelligently waived his Miranda rights. State v. Van Tran, 864 S.W.2d at 471-73. Petitioner has not shown that failing to retain the services of a language

16

comprehension expert was below the range of competence demanded of attorneys practicing criminal law. Furthermore, he has not shown a reasonable probability that the utilization of such an expert would have led to suppression of the confession. *See* Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; Baxter v. Rose, 523 S.W.2d at 936.

Additionally, petitioner has failed to establish prejudice due to the failure of trial counsel to argue a Sixth Amendment right to counsel violation. The Tennessee Supreme Court concluded the petitioner properly waived his Miranda rights. State v. Van Tran, 864 S.W.2d at 473. Petitioner has made no showing that the result would have been any different had counsel added a Sixth Amendment argument and/or Article I, § 9 Tennessee Constitution argument.

This issue is without merit.

### E.  Support Services

Petitioner contends trial counsel were ineffective in failing to seek necessary expert services to challenge the composition of the jury pool. Specifically, petitioner contends the statutory exemptions for college students and certain professionals deprived him of a fair cross-section of the community. This issue is discussed previously under the section **EXPERT SERVICES**. A statistical analysis would not have benefited petitioner. For the same reasons that the post-conviction court did not err in refusing such expert services, trial counsel were not deficient in failing to request such services.

This issue is without merit.

### F.  *Voir Dire*

Petitioner contends trial counsel were ineffective in the *voir dire* of the jury. Specifically, he contends trial counsel were ineffective in failing to: (1) sufficiently inquire into the content of publicity to which prospective jurors had been exposed;

17

(2) sufficiently question if jurors would automatically impose the death penalty upon a first degree murder conviction; (3) sufficiently question if jurors could consider mitigating evidence; and (4) challenge certain prospective jurors for cause. The post-conviction court found no deficiency on the part of trial counsel.

Like the post-conviction court, we are unable to conclude that trial counsels' performance in this regard was below the range of competence demanded of attorneys in criminal cases. *See* Baxter v. Rose, 523 S.W.2d at 936. Furthermore, petitioner has not shown that there is a reasonable probability that the result of the proceeding would have been different had counsel conducted *voir dire* differently. *See* Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068; Henley v. State, 960 S.W.2d at 579.

This issue is without merit.

### G. Failure to Present Mitigation Evidence

Petitioner contends trial counsel were deficient in failing to investigate and present additional mitigating evidence. Specifically, petitioner contends trial counsel should have presented additional evidence relating to his: (1) Amerasian status; (2) dysfunctional relationship with his mother; (3) being fatherless in a patriarchal society; (4) status as a refugee in Vietnam; and (5) medical condition in explanation of his commission of the crimes.

The post-conviction court found that trial counsel conducted a proper investigation and were not deficient in presenting mitigating evidence at the penalty phase of trial. Trial counsel were aware of petitioner's cultural background and social history as a result of their investigation. They presented proof from several witnesses in the penalty phase, including an FBI agent who testified to petitioner's cooperation in locating the co-defendants; two employers who testified that petitioner was a good employee; petitioner's Catholic Charities sponsor with whom

18

petitioner had lived; Dr. Khanna who testified about petitioner's life in Vietnam and remorse for the crimes; and petitioner's mother.

Furthermore, in conducting its proportionality review, the Tennessee Supreme Court specifically noted petitioner's cooperation with the FBI, good employment history, lack of prior criminal involvement, remorse for the homicides, personal history as a child of a Vietnamese mother and an American father, difficult childhood and educational problems. State v. Van Tran, 864 S.W.2d at 482. Despite these findings, the court found the death penalty was not disproportionate.

First, we conclude the evidence does not preponderate against the post-conviction court's finding that trial counsel's performance was not deficient. Second, we conclude petitioner has failed to establish prejudice. In reaching the latter determination we must: (1) analyze the nature and extent of the mitigating evidence not presented; (2) consider whether substantially similar mitigating evidence was presented; and (3) consider whether there was such strong evidence of aggravating factors that the mitigating evidence would not have affected the jury's determination. Goad v. State, 938 S.W.2d at 371.

The suggested mitigating evidence related to petitioner's cultural and social background and his medical condition. Much of this evidence is similar to that which was presented to the jury. Furthermore, considering the nature and circumstances of the offense, and the applicability of the two aggravating circumstances of mass murder and depravity of mind, we conclude petitioner has not established a reasonable probability that the jury's determination would have been different had this evidence been presented.

This issue is without merit.


**H. Proportionality of Death Sentence**

Petitioner contends trial counsel were deficient in failing to properly present the issue of proportionality on direct appeal. The post-conviction court found counsel were not deficient in their appellate representation.

We conclude petitioner has failed to establish prejudice with regard to this

19

issue. The Tennessee Supreme Court addressed the issue of proportionality and found the death penalty to be neither excessive nor disproportionate. State v. Van Tran, 864 S.W.2d at 482. Petitioner has not shown a reasonable probability that the result would have been different had other matters been argued on appeal.

This issue is without merit.

## I. Failure to Object

Petitioner contends counsel were ineffective in failing to object to various errors in the trial court and failing to raise those issues on appeal. Specifically, he complains of counsels' failure: (1) to insure an accurate record of *voir dire*; (2) to object to the lack of jury admonitions given by the trial court under Tenn. R. Crim. P. 24(f); (3) to object to the prosecutor's sympathy argument; (4) to object to the prosecutor's argument minimizing the jury's sentencing responsibilities; (5) to object to the prosecutor's arguing outside the record; and (6) to object to the prosecutor's characterization of defendant's mitigating evidence as "excuses."

The post-conviction court found that counsels' appellate performance did not fall below the range of competency of attorneys who practice criminal law.

We conclude that petitioner has not established a reasonable probability that the result would have been different if trial counsel had preserved and argued these issues. Petitioner's failure to establish the prejudice prong alleviates the necessity of addressing the deficiency prong. *See* Strickland v. Washington, 466 U.S. at 697, 104 S.Ct. at 2069; Goad v. State, 938 S.W.2d at 370.

This issue is without merit.

## J. Unconstitutionality of the Death Penalty

Petitioner contends trial counsel were ineffective in failing to preserve and appeal various issues relating to the unconstitutionality of the death penalty. Specifically, petitioner cites thirteen constitutional deficiencies in the statutes and procedures relating to the death penalty. He contends counsel were ineffective in failing to preserve and appeal these issues. He acknowledges that prior decisions

20

in this state have considered and rejected most of the grounds but raises them to preserve them for federal review.

On direct appeal the Tennessee Supreme Court found two aggravating circumstances were properly applied. State v. Van Tran, 864 S.W.2d at 478-80. The court further performed a proportionality review and found the death sentence to be appropriate. *Id.* at 482. The court also considered the constitutionality of the death penalty and death penalty statute and found no constitutional infirmity. *Id.* at 481-82. Furthermore, the constitutionality of the death penalty and death penalty statutes has consistently been upheld. *See* State v. Hines, 919 S.W.2d 573, 581-82 (Tenn. 1995); State v. Brimmer, 876 S.W.2d 75, 83-88 (Tenn. 1994); State v. Cazes, 875 S.W.2d at 268-70.

Petitioner has failed to establish that counsel were deficient, or that petitioner was prejudiced in any manner by the failure to raise these constitutional issues.

This issue is without merit.

### K. Cumulative Errors

Finally, petitioner argues that the cumulative effect of counsels' deficiencies rendered his trial fundamentally unfair. We have reviewed each allegation of ineffective assistance of counsel and found each to be without merit. We further conclude petitioner's trial was not fundamentally unfair due to counsels' performance.

This issue is without merit.

### CONCLUSION

After a careful examination of the record, we conclude that there is no reversible error; therefore, the judgment of the trial court is affirmed.

The sentence of death shall be carried out as provided by law on August 2, 1999, unless otherwise ordered by an appropriate court.

21

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


_____
**JOHN H. PEAY, JUDGE**


_____
**JAMES C. BEASLEY, SR., SPECIAL JUDGE**